# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-KA-01264-SCT

*DOUGLAS JAY, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/11/2005 |
| TRIAL JUDGE: | HON. MARCUS D. GORDON |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | HENRY PALMER |
| | MARVIN E. WIGGINS, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: STEPHANIE B. WOOD |
| DISTRICT ATTORNEY: | MARK SHELDON DUNCAN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 10/29/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    Douglas E. Jay, Jr.,was tried *in absentia* and convicted on multiple counts of drug possession.  He appeals, claiming he was incompetent to stand trial.

## BACKGROUND FACTS AND PROCEEDINGS

¶2.    After obtaining a search warrant, reading Jay his ***Miranda***[1] rights, and searching him, law enforcement officers found three bags on his person, one of which contained an off-white substance.  The second bag contained a leafy green substance, and the third contained pills.  These substances were later determined to be methamphetamine, marijuana, and alprazolam

---

[1] ***Miranda v. Arizona***, 384 U.S. 436; 86 S. Ct. 1602; 16 L. Ed. 2d 694 (1966).

(Xanax), respectively. During the search of Jay's bedroom, marijuana was found in a night stand and in a metal tube under a pillow.

¶3. Deputy Sheriff Mark Spence testified that the officers prepared to take Jay and Theresa Chapman – an adult female who was also at the residence at the time the search warrant was executed – to jail. While transporting Jay and Chapman out of the home, Jay said, "why are you taking [Chapman]?" Spence replied, "with everything we found here, she was here, we're going to take her in also," to which Jay replied, "there's no need for that . . . everything that you found here was mine."

¶4. Jay was indicted as a second-time drug offender for four felonies: possession of methamphetamine, possession of marijuana, possession of alprazolam, and possession of a firearm by a convicted felon. Trial was set for April 11, 2005.

¶5. While out on bond awaiting trial, Jay was attacked on his motorcycle and hit in the head with a rifle stock. As a result of the attack, Jay was diagnosed with traumatic brain injury.

¶6. On April 4, 2005, Jay's trial counsel filed a motion for continuance, claiming Jay was incompetent to stand trial. In support of the motion, counsel provided the court a letter from Dr. Stuart A. Yablon, the Director of the Brain Injury Program at Methodist Rehabilitation Center in Jackson, Mississippi, which stated that Jay was "unable to participate in any court proceedings at this time" due to his injuries.

¶7. On April 6, 2005, the trial court ordered that psychiatrist Mark C. Webb conduct a psychiatric examination of Jay the next day to determine his ability to stand trial and assist his attorney in his defense. Although Dr. Webb's report had not been received, Jay's case

2

was called to trial in the Circuit Court of Newton County on April 11, 2005. Prior to the docket being called at 9 a.m., Jay was present at the courthouse. However, he could not be located when his case was called. After Jay could not be located during a fifteen-minute recess, the case proceeded to trial without him.

¶8.    Two days after the trial began, Dr. Webb filed his report with the trial court. The report stated that Jay "admits that he had all of the drugs in his possession" at the time he was arrested, and Jay "states to being intoxicated with methamphetamine and marijuana on the day of his arrest." The report further stated that, "Mr. Jay is very aware of the court proceedings and is working with his attorney," and that Dr. Webb had "made Mr. Jay completely aware of the purpose and ramifications of this interview and [Jay] consent[ed] to both." The report concluded that Jay was "able to stand trial, assist his attorney in his defense, able to know the difference between right and wrong, and understood the quality of his actions at the time of the alleged offense." In summary, the report stated, "Mr. Jay is competent to stand trial and is not criminally insane."

¶9.    At trial, the State presented numerous witnesses in its case-in-chief. When the State rested, Jay's attorney moved for a directed verdict. The motion was denied, and the trial judge inquired into the amount of testimony the defense would present. Jay's attorney announced that he would have "none."

¶10.    Jay's attorney objected to the trial being conducted in his client's absence and moved for a continuance. In denying the motion, the trial judge stated:

> [T]his man voluntarily left this courthouse. . . . he has known . . . since December of last year, that his case was being tried today, and he was here Monday of last week. It was announced that the case would be tried today.

3

He was here Thursday on his motion. It was announced that the case would be tried today . . . . He was here this morning and he met with you, and . . . you told him to go on in the courtroom and that you'd come and get him. He left . . . We looked for him. We waited . . . if there's any harm that comes from him not being here, he's the one that caused it.

Jay's attorney responded, "Can't argue that fact, Your Honor."

¶11. The trial judge instructed the jury, and the attorneys made closing arguments. The jury found Jay guilty on all three drug counts contained in the indictment. The fourth count of the indictment, possession of a firearm by a convicted felon, was ordered *nolle prosequi*.

¶12. A sentencing hearing was scheduled for April 12, 2005. Arguing that Jay could not have known the time and date of the sentencing hearing, Jay's attorney objected to the hearing being held in Jay's absence. The trial court deferred Jay's sentencing until April 15, 2005.

¶13. Although Jay did not appear on April 15, the trial court proceeded. Finding that the State had met the burden of proof regarding Jay being a second-time drug offender, the trial court sentenced Jay pursuant to Section 41-29-147 of the Mississippi Code, which provides for enhanced sentencing. Miss. Code Ann. § 41-29-147 (Rev. 2005). For possession of methamphetamine, Jay was sentenced to twenty-five years in prison and fined $10,000. For possession of marijuana, he was sentenced to six years in prison to run consecutively with the previous sentence. For possession of alprazolam, Jay was sentenced to two years in prison, to run concurrently with the first two sentences.

¶14. On April 22, 2005, Jay's attorney filed several post-trial motions, including a motion for a new trial, which was not ruled upon until June 2008. On October 13, 2005, Jay's attorney filed a motion to set aside judgment of conviction and sentence. A hearing was held

4

on this motion on May 11, 2006, and the motion was overruled on May 24, 2006. Although the trial court had not ruled on Jay's motion for new trial, his attorney filed a motion for an out-of-time appeal on June 2, 2006. This motion was overruled on August 4, 2006.

¶15. Jay filed a notice of appeal on September 5, 2006, which Jay claims in his brief was "the next business day following the three-day Labor Day weekend." The State filed a motion to dismiss the appeal pursuant to Rule 4 of the Mississippi Rules of Appellate Procedure. The State argued that Jay's appeal was not ripe because Jay's motion for a new trial had not been disposed of in the trial court before the notice of appeal was filed, and therefore, Jay had not exhausted his remedies in the trial court. Finding this argument persuasive, the Court of Appeals dismissed the appeal, because it was "not timely filed," concluding that "the Court has no jurisdiction to hear the appeal." A motion for reconsideration was denied.

¶16. On June 4, 2008, Jay requested that the trial court hold a hearing on his motion for a new trial. The hearing was held on June 18, 2008, and the trial court denied the motion. On June 19, 2008, the trial court amended its June 18 order. This amended order stated that Jay's motion for new trial was denied "for not being timely brought before the Court for a decision thereon." Jay's attorney now claims that this amendment was "unknown to counsel" and that the issue of timeliness was "addressed inconclusively during the hearing."

¶17. Jay filed the current notice of appeal to this Court on July 3, 2008. Jay appeals from the judgment of conviction entered April 21, 2005, the order overruling motion to set aside judgment of conviction and sentence entered on May 27, 2006, the order denying motion for

5

new trial entered on June 18, 2008, and the order amending previous order entered June 19, 2008.

¶18. Jay raises eight issues. Because we find dispositive the issue of Jay's right to a mental competency hearing, the procedural issues, as well as the trial in Jay's absence, are addressed only briefly. The other issues Jay raises need not be addressed.

## DISCUSSION

*Post-Trial Motions*

¶19. Jay first argues that the trial court erred in not granting his multiple post-trial motions, including his motion for a new trial. This Court has stated that "[i]n reviewing the decision of the trial court on a motion for a new trial, this Court views all of the evidence in the light most consistent with the jury verdict." **Daniels v. State**, 742 So. 2d 1140, 1143 (Miss. 1999) (citing **Strong v. State**, 600 So. 2d 199, 204 (Miss. 1992)). While this issue is not dispositive, the denial of the motion for a new trial is addressed solely regarding the procedural issues involved with perfecting the current appeal.

¶20. Jay's trial counsel filed a motion for a new trial on April 26, 2005, days after the judgment and sentence were filed. This motion contained nine assignments of error. The trial court neither denied the motion nor held a hearing until June 18, 2008.

¶21. Rule 4 of the Mississippi Rules for Appellate Procedure – which governs when an appeal as of right can be taken – requires that "the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." However, Rule 4(a) excepts from this thirty-day requirement cases in which motions have been filed pursuant to Rule 4(e). Rule 4(e) provides that the thirty-

6

day time period for an appeal in a case in which the defendant has made a timely motion for a new trial shall begin to run from the date of the denial of such motion. The comments to Rule 4 read, in pertinent part:

> Rule[] . . . 4(e) now provide[s] that a notice of appeal filed before the disposition of a specified post trial motion will become effective upon disposition of the motion. A notice filed before the filing of one of the specified motions or after the filing of a motion but before its disposition is, in effect, suspended until the motion's disposition, whereupon the previously filed notice effectively places jurisdiction in the Supreme Court.

Miss. R. App. P. 4 cmt.

¶22.    Rule 10.05 of the Uniform Circuit and County Court Rules, which governs motions for new trials, provides that "[t]he trial judge may hear and determine a motion for a new trial *at any time*." (Emphasis added.) The rule requires that a motion for a new trial must be filed "within ten days of the entry of judgment." Miss. Unif. Cir. & Cty. R. 10.5. Jay's judgment was filed on April 21, 2005, and his motion for a new trial was filed on April 26, 2005. Clearly, Jay filed his motion for a new trial within the time prescribed by the rule. Therefore, the trial judge – who had the discretion under the Rules to hear this motion at any time – waited more than three years to do so, after which, the current notice of appeal was timely filed.

¶23.    The trial court issued a sua sponte order on June 19, 2008, which amended the June 18 order denying the motion for a new trial. The reason stated in the amended order for the denial was that the motion was not "timely presented to the Court for a decision thereon." Neither Mississippi Rule of Appellate Procedure 4(e) nor Uniform Circuit and County Court Rule 10.05 requires a motion for new trial (which has been filed) to be "timely presented"

7

by the defendant to the trial court. Therefore, under the facts of this case, the thirty-day time period to file a notice of appeal began to run on June 18, 2008. Jay filed the current notice of appeal on July 3, 2008, which was within the thirty-day requirement.

*Mental Competency Hearing*

¶24. Jay's second issue is the trial court's failure to conduct a mental competency hearing to determine his ability to stand trial. The United States Supreme Court has defined competency to stand trial as "whether [a defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as factual understanding of the proceedings against him." **Dusky v. United States**, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824, 825 (1960) (per curiam).

¶25.  In order to be deemed competent to stand trial, a defendant must be one:

> (1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity of the case.

**Martin v. State**, 871 So. 2d 693, 697 (Miss. 2004) (quoting **Howard v. State**, 701 So. 2d 274, 280 (Miss. 1997) (overruled on other grounds)). When a trial court determines that a defendant is competent to stand trial, we will not overturn such finding unless it was "manifestly against the overwhelming weight of the evidence." **Martin**, 871 So. 2d at 698 (quoting **Emanuel v. State**, 412 So. 2d 1187, 1189 (Miss. 1982)).

¶26. Jay filed a motion for extension of time on April 4, 2005, one week before the trial was scheduled to begin. The motion claimed Jay had sustained a severe traumatic brain injury in September 2004. Attached to that motion was a letter from Dr. Yablon, which

8

stated that "[d]ue to the severity of [Jay's] injury, he continues to suffer from cognitive, motor, functional and sensory deficits and is at increased risk for seizures and [deep-vein thrombosis]. He is therefore, unable to make competent medical decisions and unable to participate in any court proceedings at this time."

¶27. The trial judge ordered Jay to undergo a psychiatric examination by Dr. Webb in order to determine Jay's ability to stand trial and assist his attorney in his defense. Dr. Webb's report was filed in the court file on April 13, 2005 -- two days after the trial. There is no indication in the record that the trial judge ever read or considered it. Dr. Webb's report concluded that Jay was "competent to stand trial." Thus, the court file contained conflicting opinions as to whether Jay was competent to stand trial. We have no way of knowing whether the trial judge considered the two opinions and found Dr. Webb's opinion more persuasive, or simply failed to hold a hearing to consider the matter.

¶28. Rule 9.06 of the Uniform Circuit and County Court Rules governs cases in which competence to stand trial is at issue. The rule reads, in relevant part:

> If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated of 1972.
>
> **After the examination the court *shall* conduct a hearing to determine if the defendant is competent to stand trial**. After hearing all the evidence, the court *shall* **weigh the evidence and make a determination of whether the defendant is competent to stand trial**. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.

Miss. Unif. Cir. & Cty. R. 9.06 (emphasis added).

9

¶29. The rule requires a mental examination be conducted when the trial court has reasonable grounds to believe the defendant is incompetent to stand trial. Here, the trial court clearly had reasonable grounds to believe Jay was incompetent to stand trial, as evidenced by the order for a psychiatric evaluation.

¶30. The rule further requires that, following such examination, the court *shall* hold a competency hearing to determine whether the defendant is competent to stand trial. *Id*. Furthermore, the rule requires the court to make its finding a matter of record before the case proceeds to trial. Nothing in the record indicates that the trial court ever held a competency hearing or made findings as to Jay's competency to stand trial.

¶31. The State argues that – because the record does not reflect whether or not the trial judge actually received the report before trial or whether he ever spoke with Dr. Webb concerning the defendant – this Court "must assume that the trial court objectively considered all the facts and circumstances, including those which are not available to this Court, which bore upon the defendant's competence to stand trial." To support its argument, the State cites *Conner v. State*, 632 So. 2d 1239, 1251 (Miss. 1993) (overruled on other grounds)). However, the *Conner* case references the type of evidence the trial judge, and not the appellate courts, can see first-hand: namely, the defendant's demeanor and behavior. *See Conner*, 632 So. 2d at 1248-1251. *Conner* gives no support whatsoever to the State's argument.

¶32. More recently, in *Hearn v. State*, 3 So. 3d 722,730 (Miss. 2008), this Court found that, because no mental competency hearing was held prior to trial:

10

> the trial court failed to comply in the strictest technical sense with Rule 9.06 which mandates that a competency hearing be conducted following a court-ordered mental examination. . . . However, [the evaluating psychiatrist] testified at trial as to [the defendant]'s competency and was subjected to cross-examination. Because [the defendant] was afforded the opportunity to present competing evidence, the purposes of Rule 9.06 were satisfied.

*Id.* There are currently two views on this Court regarding mental competency hearings, that of the majority in *Hearn*, and that as expressed in *Sanders v. State*, 9 So. 3d 1132, 1141 (Miss. 2009) (Kitchens, J., concurring in result only, joined by Dickinson, J.).

¶33. Justice Kitchens, advocating strict compliance with Rule 9.06's pretrial competency hearing outside of the jury's presence, stated that "the procedures of Rule 9.06 are in place to protect the due process rights of defendants whose competency to stand trial is in doubt. They are not technical requirements that may be side-stepped." *Id.*

¶34. Regardless of which view one takes generally, there was no competency hearing prior to or during trial. Dr. Webb did not testify at trial, and there is, therefore, no argument that the "purposes" of Rule 9.06 were satisfied, as required in *Hearn*. *Hearn*, 3 So. 3d at 730.

¶35. The United States Supreme Court has held that a criminal defendant's "constitutional rights were abridged by his failure to receive an adequate hearing on his competence to stand trial" when "the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial." *Pate v. Robinson*, 383 U.S. 375, 385-386, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). Therefore, the trial court's failure to hold a competency hearing was a violation of Jay's constitutional rights and, therefore, requires reversal.

11

*Trial in absentia*

¶36.   Jay argues that the trial court acted arbitrarily by conducting the trial in his absence. He complains that the court allowed only a fifteen-minute delay to locate him before the trial was commenced. This issue is controlled by Section 99-17-9 of the Mississippi Code, which states:

> In criminal cases the presence of the prisoner may be waived (a) if the defendant is in custody and consenting thereto, or (b) is on recognizance or bail, has been arrested and escaped, or has been notified in writing by the proper officer of the pendency of the indictment against him, and resisted or fled, or refused to be taken, or is in any way in default for nonappearance, the trial may progress at the discretion of the court, and judgment made final and sentence awarded as though such defendant were personally present in court.

Miss. Code Ann. § 99-17-9 (Rev. 2007).

¶37.   Jay argues that this Court in *Sandoval v. State*, 631 So. 2d 159 (Miss. 1994), and its progeny, has held that felony causes should not be tried *in absentia* of the defendant. However, as the Court of Appeals pointed out in *Sessom v. State*, 942 So. 2d 234, 237 (Miss. Ct. App. 2006), the Mississippi Legislature has effectively overruled *Sandoval*. The Court of Appeals explained that:

> Pursuant to *Sandoval*, the circuit court had no authority to try [a felony defendant] in his absence and the trial judge did not have the option to proceed with trial . . . . The Legislature did not amend Section 99-17-9 of the Mississippi Code until July 1, 2005. That amendment effectively overruled *Sandoval* as it relates to trial of a felony offender in his absence.

*Sessom*, 942 So. 2d at 237.

¶38.   Even if this were not so, *Jefferson v. State*, 807 So. 2d 1222, 1227 (Miss. 2002), "carve[d] out an exception [to the *Sandoval* rule] based on willful, voluntary and deliberate

12

actions by a defendant in avoiding trial." Jay argues that his brain damage mitigates his absence, whereas there was no evidence of brain damage in the *Jefferson* case.

¶39. This issue turns on Jay's mental competency hearing. Had Jay been found mentally competent, the *Jefferson* exception to the *Sandoval* rule would apply, allowing Jay to be tried *in absentia*, based on his willful, voluntary, and deliberate absence from trial. However, had he been found incompetent to stand trial, the issue would be moot.

## CONCLUSION

¶40. The trial court's failure to conduct a mental competency hearing violated Rule 9.06 as well as Jay's constitutional right to have his competency determined. Whether or not Jay's absence at trial was a result of willful, voluntary, and deliberate actions turned on whether or not he was mentally competent at the time of trial. Because the trial court failed to conduct a competency hearing, this question cannot be answered. This matter is reversed and remanded for a new trial subject to a competency hearing, and provided the trial judge determines in the course of the Rule 9.06 hearing that Jay is competent to stand trial.

¶41. **REVERSED AND REMANDED.**

**WALLER, C.J., CARLSON AND GRAVES, P.JJ., RANDOLPH, LAMAR, KITCHENS, CHANDLER AND PIERCE, JJ., CONCUR.**