KITCHENS, Justice,
for the Court:
¶ 1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.
¶ 2. More than two years after his trial, Patrick Coleman was ordered to a retrospective mental competency hearing by the Court of Appeals because he erroneously had been denied a pretrial competency hearing by the Lauderdale County Circuit Court. Finding that the nunc pro tunc competency hearing did not adequately protect Coleman’s due process rights and the procedural guarantees of Uniform Rule of Circuit and County Court Practice 9.06, we reverse the decisions of the Court of Appeals and the Lauderdale County Circuit Court and remand the case to the latter court for a new trial consistent with this decision.
FACTS AND PROCEDURAL HISTORY
¶ 3. The facts surrounding the death of Frederick Pruitt are gleaned from the record. The testimony of Kimberly Watts provides the following account of relevant events. On November 28, 2007, Patrick Coleman approached Watts’s apartment. A number of Watts’s friends, including Frederick Pruitt, were inside the apartment, preparing to play dominos. According to Watts, she saw Coleman and another man, both armed, running toward the house. Coleman demanded that Pruitt come out of the apartment. Watts testified that, when Pruitt refused to come out, Coleman entered the apartment and shot at Pruitt. A bullet struck Pruitt in the forehead and killed him. Watts stated that Coleman told her to call 911 and then waited outside the apartment for police to arrive.
¶ 4. Before trial, on November 24, 2008, Coleman filed a “Motion for Psychiatric Examination and/or Treatment.” The trial court granted the motion in an effort to determine whether Coleman was mentally competent to stand trial and to ascertain his mental state at the time Pruitt was killed. The trial was continued several times while Coleman awaited his examination. The trial court granted a final continuance on March 24, 2009, setting the trial for June 1, 2009. At the time of the final continuance and scheduling of the trial for a day certain, no mental evaluation had been performed.
¶ 5. Coleman’s psychological and psychiatric evaluation occurred on April 1, 2009, at the Mississippi State Hospital at Whitfield. The interview took approximately two hours. It was conducted by two state psychologists and a state psychiatrist, who prepared for it by reviewing Coleman’s police records, his statement to police following his arrest, his psychiatric records from previous mental health treatment at three different hospitals, his school records, and information obtained from the jail staff where he was incarcerated. A four-page summary report of Coleman’s evaluation was filed with the circuit court on May 18, 2009, two weeks before his *163 scheduled trial. It noted that Coleman had been diagnosed with several psychiatric disorders, including schizophrenia, depression, intermittent explosive disorder, and personality disorder. He also had suffered from “alcohol abuse and cannabis abuse disorders.” However, the report concluded that Coleman possessed “the sufficient present ability to consult with his attorney to a reasonable degree of rational understanding in the preparation of his defense, and that he had a rational as well as a factual understanding of the nature and object of the legal proceedings against him.” The evaluators also determined that, at the time of the crime, “Coleman was not experiencing symptoms of a major mental illness.”
¶ 6. Coleman’s trial commenced on June 1, 2009. At that time, the summary report was the only information regarding the evaluation that had been received by the trial court and the attorneys for the prosecution and the defense. The following is taken from the Court of Appeals opinion in Coleman v. State, 127 So.3d 236, 237 (Miss. 2012).
On the morning of June 1, 2009, Coleman’s counsel ... requested a continuance, asserting that Coleman was entitled to a full competency hearing and that she needed time to subpoena witnesses who would testify as to Coleman’s competency. She also wanted to cross-examine the physician who made the mental-evaluation report on Coleman. In response, the trial judge questioned why defense counsel had waited until the morning of trial after the jury had been qualified to request a competency hearing, when the defense had received the mental-evaluation report approximately ten days prior to trial. The trial judge concluded that the issue was waived....
On the second morning of trial, defense counsel again raised the issue of competency. She filed a motion for a mistrial and a reinstatement of the request for a competency hearing pursuant to Uniform Rule of Circuit and County Court 9.06, but the motion was denied. Attached to the motion was an affidavit from Coleman’s wife stating that her husband “suffers from many mental problems,” and before the incident, he “had been seeing invisible people and talking to himself for over a week”; he “was out of his medication and was becoming more and more uncontrollable.” Also attached was an affidavit by defense counsel insisting that Coleman was incompetent to stand trial.
Coleman testified in his own defense, stating that he meant only to scare Pruitt and not to shoot him, and that he blanked out before the second shot was fired. The trial court denied a jury instruction on the lesser-ineluded offense of manslaughter. Coleman was convicted of deliberate design murder and sentenced to life in prison. After the trial, in a motion for new trial.or judgment notwithstanding the verdict (JNOV), counsel for Coleman again argued that Rule 9.06 required a competency hearing that Coleman erroneously had been denied.
At the hearing on the post-trial motion, defense counsel ... introduced into evidence Coleman’s full mental evaluation from Whitfield, which Coleman’s attorney had only obtained the day before. Defense counsel explained that she had not requested a competency hearing before trial because it was her understanding that once the court orders the defendant to submit to a psychiatric examination under Rule 9.06, the court must conduct a hearing. The trial court did not accept defense counsel’s reasoning and maintained that all of the information that was presented indicated *164 Coleman was competent to stand trial. The trial court denied the motion for a new trial or JNOV.
Id. at 239. Further, the trial court gave no indication that it had reviewed the full report in denying Coleman’s request for a rehearing. Id. at n. 1.
¶ 7. On appeal, the Court of Appeals correctly found that Coleman had been entitled to a competency hearing pursuant to Rule 9.06. See id. However, rather than reversing and remanding for a new trial, the Court of Appeals determined that there was “sufficient evidence to make a meaningful retrospective competency determination.” Id. In September 2011, a retrospective competency hearing was held in the trial court, at which the parties were permitted to present evidence regarding Coleman’s competency to stand trial, or his lack thereof, in June of 2009.[1] Coleman presented almost no evidence to support his assertion that he had been mentally incompetent at the time of trial. Besides asking the trial court to take judicial notice of the facts of the case and Coleman’s demeanor during trial, the State called no witnesses and presented no evidence. The one piece of evidence that was admitted was a copy of the four-page summary report from Whitfield. For unknown reasons, counsel for Coleman at the nunc pro tunc hearing did not introduce, and the court did not consider, the full twenty-nine-page mental competency report. The trial court found that Coleman had been mentally competent to stand trial in June of 2009. The Court of Appeals found no error and affirmed that determination. Coleman also raised an ineffective assistance of counsel claim on appeal, but the Court of Appeals declined to address it, finding that it would be more appropriate in a post-conviction-relief context. Coleman petitioned this Court for a writ of certiorari, claiming that he was entitled to a new trial rather than a retrospective competency hearing. We granted that petition.
ANALYSIS
¶ 8. In order to be deemed mentally competent to stand trial, a defendant must have “the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding ... and ... a rational as well as factual understanding of the proceedings against him.” Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 788-89, 4 L.Ed.2d 824, 825 (1960) (per curiam). Rule 9.06 governs the procedure for a determination of mental competency in Mississippi. It provides that:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court....
.After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
URCCC 9.06 (emphasis added).
¶ 9. Although Rule 9.06 mandates a competency hearing after a psychiatric evalua *165 tion is conducted, this Court held in one case that a hearing does not necessarily have to take place as long as “the purposes of Rule 9.06[a]re satisfied.” Hearn v. State, 3 So.3d 722, 730 (Miss.2008). There, no competency hearing was held after the mental examination had taken place. Id. at 727. However, one of the doctors who had examined the defendant testified at trial regarding his mental competency and was cross-examined by counsel for the defendant. Id. at 730. This Court held that, “[b]ecause Hearn was afforded the opportunity to present competing evidence, the purposes of Rule 9.06 were satisfied.” Id.
¶ 10. In two later cases, we held that the requirements of Rule 9.06 were not met when trial courts failed to conduct pretrial mental competency hearings, and those failures necessitated new trials. In Sanders v. State, 9 So.3d 1132, 1136 (Miss. 2009), this Court held that the “plain language” of Rule 9.06 requires a “competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.” There, the trial court granted the motion for a psychiatric examination, the examination was performed, but no subsequent competency hearing was held, nor did the trial court make any determination on the record regarding the defendant’s present competency to stand trial. Id. at 1136-37. We found that the failure to do so was reversible error. Id. at 1139. Similarly, in Jay v. State, 25 So.3d 257, 263 (Miss.2009), this Court held that the failure to conduct a competency hearing prior to or during trial “was a violation of [the defendant's constitutional rights and, therefore, required] reversal.”
¶ 11. Most recently, in Pitchford v. State, 2010-DR-01031-SCT (Order of February 14, 2013), this Court ordered a post-trial competency hearing to determine whether the defendant had been mentally competent to stand trial. In Pitchford, a capital murder case,[2] the trial court granted the defendant a competency hearing,, and the defendant submitted to a mental examination at the Mississippi State Hospital. Pitchford, 2010-DR-01031-SCT. The trial court held a hearing to rule on several pending motions as well as competency. Id. Defense counsel was not provided notice that Pitchford’s competency to stand trial would be addressed at the hearing, and came prepared to argue only the pending motions. Id. Based on the written report from the Mississippi State Hospital, the trial court determined that Pitch-ford was mentally competent to stand trial. Id. This Court held that “[a] Defendant is entitled to reasonable prior notice of the hearing at which competency to stand trial will be decided, so that the defendant will have the opportunity to subpoena witnesses and produce additional information for consideration by the trial judge.” Id. In order to afford Pitchford’s counsel ample time to prepare, we ordered the trial court to conduct a hearing to determine whether Pitchford had been mentally competent to stand trial. Id.
¶ 12. The State argues that the case before us is akin to Hearn, because the post-trial, post-appeal competency hearing for Coleman was conducted on the basis of the mental evaluation Coleman had received before his trial occurred. Since the information was current when Coleman went to trial, and Coleman was provided an opportunity to call witnesses and present evidence to support his position, as well as cross-examine the State’s witnesses, the State argues that the purposes *166 of Rule 9.06 were satisfied, and, therefore, a new trial is not warranted. The State further argues that, because this Court ordered a retrospective competency hearing in Pitchford, such a hearing was appropriate in this case. Coleman argues that this Court’s holdings in Sanders and Jay are controlling, and that the failure to reverse and remand for a new trial was error because Rule 9.06 mandates a competency hearing before trial if a motion for mental examination has been granted.
¶ 13. The United States Supreme Court repeatedly has recognized the “inherent difficulties of such a nunc pro tunc determination under the most favorable circumstances.... ” Drope v. Missouri, 420 U.S. 162, 183, 95 S.Ct. 896, 909, 43 L.Ed.2d 103 (1975); see also Pate v. Robinson, 383 U.S. 375, 387, 86 S.Ct. 836, 843, 15 L.Ed.2d 815 (1966); Dusky v. U.S., 362 U.S. 402, 403, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). The ultimate inquiry in any mental competency determination is “whether the proceedings in this case were consistent with [the defendant’s] right to a fair trial.” Drope, 420 U.S. at 173, 95 S.Ct. 896. A defendant is denied his due process rights when the trial court fails “to observe procedures adequate to protect a defendant’s right not to be tried or convicted while incompetent to stand trial....” Id. at 172, 95 S.Ct. 896. Rule 9.06 is meant to ensure that a defendant’s due process rights are not violated. It provides that, if the court has reasonable grounds to believe that the defendant is incompetent to stand trial, a mental evaluation shall be performed, and then a hearing shall be conducted to determine whether he is mentally fit to stand trial. The United States Supreme Court determined that a similar statutory procedure in Missouri was “on its face, constitutionally adequate to protect a defendant’s right not to be tried while legally incompetent.” Id. at 173, 95 S.Ct. 896. Our rule also is facially adequate to guard the due process rights of defendants.
¶ 14. As this Court has stressed time and again, “a rule which is not enforced is no rule.” Illinois Cent. R. Co. v. Moore, 994 So.2d 723, 726 (Miss.2008) (quoting Box v. State, 437 So.2d 19, 21 (Miss.1983)). “A ‘rule’ is ‘an authoritative direction for conduct.’ ” Moore, 994 So.2d at 726 (citation omitted) (emphasis in original). The language of Rule 9.06 is clear and it is simple. If a trial court “has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination.... ” URCCC 9.06 (emphasis added). “After the examination, the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial.” Id. (emphasis added). In other words, when a motion for a mental examination has been granted, such an examination must occur, and then a separate competency hearing must be conducted before trial begins. To proceed differently would not satisfy “the purposes of Rule 9.06.” Hearn, 3 So.3d at 730. If this Court begins to approve retrospective mental competency hearings, the procedural guarantees of Rule 9.06 will be undermined and, ultimately, defeated.
¶ 15. Justice Coleman’s dissent argues that the failure to conduct a timely competency hearing was harmless error because the defendant failed to present any evidence supporting a claim of incompetence during the retrospective hearing. This misses the mark for a number of reasons. The errors which occurred during the retrospective hearing were not harmless. The State did not subpoena or produce any of the examining doctors who *167 had conducted the examination and determined Coleman to be competent. The State presented nothing beyond its asking the court to consider the record, Coleman’s demeanor during the trial, his decision to testify, and his own testimony at trial. The only item admitted into evidence was the four-page summary mental evaluation; the full twenty-nine-page report was not offered or received into evidence. There is no mention of the full report in the record of the nunc pro tunc competency hearing and no indication that the court relied on the full report in making its determination. Justice Coleman argues that defendant Coleman bears the burden to prove his incompetence to stand trial. Unfortunately, he never was given the chance to bear that burden. Coleman was given the burden to prove that he was incompetent to stand trial two years prior to his hearing, a burden not contemplated by Rule 9.06. He also has supported his assignment of error on appeal, that error being the occurrence of a nunc pro tunc competency hearing.
¶ 16. Additionally, for the court to have considered the defendant’s demeanor, testimony, and decision to testify at trial as part of the retrospective hearing put Coleman at a significant disadvantage. Had the trial court held a timely pretrial competency hearing, as it should have, none of the in-trial conduct of the defendant could have been considered at that time, because it had not occurred. The trial court should have considered only the information related to Coleman’s competence on the eve of trial.
¶ 17. Justice Coleman’s contention that the failure to hold a timely competency hearing was harmless error due to the lack of evidence presented at the untimely competency hearing is misplaced. The rather narrow issue before us is whether a retrospective mental competency hearing satisfies the purposes of Rule 9.06. See Hearn, 3 So.3d at 730. Under the plain and unequivocal language of the rule, it does not. Our task is to decide whether a retrospective hearing should have occurred at all, not whether sufficient evidence was presented at the retrospective hearing to render the initial error harmless. The trial court’s failure to have held a timely competency hearing constituted error when Coleman’s trial commenced in the absence of such, and any alleged deficient performance by defense counsel at the retrospective hearing did nothing to render that error harmless.
¶ 18. Finally, we note that the facts and circumstances presented in Pitchford were significantly different than those before us in the present case. In Pitchford, the trial court held a hearing, but defense counsel was not given notice that mental competency to stand trial was to be determined at that time. Pitchford, 2010-DR-01032-SCT (Order of February 14, 2013). Here, the trial court outright denied Coleman a hearing and determined that he somehow had waived his right to a competency hearing, despite repeated requests for such a proceeding both before and during trial. In Pitchford, the defendant’s competence to stand trial was determined based on a written report from the Mississippi State Hospital; but here, the trial court based its determination of Coleman’s competence to stand trial on a four-page summary report. Pitchford, 2010-DR-01032-SCT. We found that, under the facts in Pitch-ford, where the trial court held a mental competency hearing but did not give notice to defense counsel, a retrospective mental competency hearing was sufficient to guard the defendant’s due process rights. Id. On the other hand, under the facts in this case, when the trial court simply denied the defendant a hearing, we find that a retrospective mental competency deter *168 mination does not adequately protect Coleman’s due process rights.
¶ 19. Counsel for Coleman had moved for a mental competency examination more than five months in advance of trial. The trial court granted the motion, and Coleman awaited, then submitted to, the court-ordered evaluation. The trial court’s grant of Coleman’s motion was conclusive of its having found reasonable ground to believe that Coleman was entitled to a mental examination and a competency hearing, based on the plain and forthright language of Rule 9.06. The trial court denied Coleman a competency hearing on the ground that it was not requested until the day of trial and so, according to the trial judge, it was waived. However, Rule 9.06 plainly mandates that the next step after the mental examination has occurred is for the trial court to hold a separate competency hearing before trial. This simply was not done. A retrospective competency hearing is not mentioned or even suggested by Rule 9.06, for the rule clearly specifies that a competency determination must occur “before or during trial,” not after trial, conviction, and appeal. Thus, such an innovation should not be condoned by this Court. It is neither prudent nor permissible for our trial courts, in their implementation of Rule 9.06, to deny a timely hearing on the accused person’s mental competence to stand trial, to proceed to trial, and then attempt later to remediate the omission by conducting an extremely untimely mental competency hearing.
CONCLUSION
¶ 20. Rule 9.06 of the Uniform Rules of Circuit and County Court Practice clearly delineates the procedure for a trial court’s determination of whether a potentially incompetent criminal defendant is mentally competent to stand trial. Once a mental health evaluation has occurred, the trial court must hold a separate competency hearing before the trial begins. If a criminal defendant’s mental competence is questioned during trial, and a motion for mental examination is granted, the trial must be suspended until a mental examination is completed and a separate hearing on mental competency is conducted. A failure to follow this procedure is not cured by a retrospective competency hearing. Patrick Coleman’s Motion for Psychiatric Examination and/or Treatment was granted. He was examined, but the trial court did not hold a separate and timely hearing to determine his mental competence to stand trial. The retrospective competency hearing ordered by the Court of Appeals does not comply with the strict but simple procedures mandated by Rule 9.06. Accordingly, we reverse the judgments of the Court of Appeals and the Lauderdale County Circuit Court and remand this case to the trial court for new proceedings consistent with this opinion.
¶ 21. REVERSED AND REMANDED.
LAMAR, CHANDLER AND KING, JJ„ CONCUR. DICKINSON, P.J., CONCURS IN RESULT ONLY. COLEMAN, J„ DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., RANDOLPH, P.J., AND PIERCE, J.

. Coleman was represented by Wanda Abioto at trial and by Eric Hessler at the retrospective hearing.

. Pitchford's conviction was affirmed by this Court. See Pitchford v. State, 45 So.3d 216 (Miss.2010).