LEE, C.J., for the Court:
¶ 1. Robert Silvia was convicted of murder and sentenced to life in the custody of the Mississippi Department of Corrections. Silvia'was also ordered to pay a $10,000 fine and $6,500 in restitution to the Crime Victims’ Compensation Fund. Upon denial of his post-trial motions, Silvia filed an appeal, asserting the trial court erred by: (1) denying his motion to suppress; (2) failing to conduct a competency hearing; and (3) failing to grant his motion for a directed verdict or judgment notwithstanding the verdict. We consider Silvia’s second issue, the lack of a competency hearing, to be dispositive in this case. .Since we reverse and remand for a new trial based on the competency issue, we need not address his other ’two issues on appeal.
FACTS
¶ 2. On June 10, 2010, Mandy Barthelot informed the Walthall County Sheriff’s Department that she was concerned about her mother, Darlene Barthelot. Mandy, who lived in Louisiana, had not heard from Darlene, and her attempts to reach her mother through Silvia, Darlene’s boyfriend of seventeen years,[1] had been unsuccessful. Mandy said Silvia would give‘her varying excuses as ■ to why, Darlene was unavailable.
¶ 3. Deputy Billy Wayne Thornhill reported to Darlene arid Silvia’s home in Jayess, Mississippi. Gavin Fulkerson, a neighbor, informed Deputy Thornhill that he had not seen Darlene in several days, and Silvia had told him and Mandy conflicting stories as to Darlene’s whereabouts. Fulkerson told Députy Thornhill *534 that Silvia had been upset and crying over his recent separation from Darlene. Fulk-erson also said Silvia had recently lost his job. Fulkerson testified that when Mandy told Silvia she was calling the police, Silvia left his house in a hurry, driving a small red car. Deputy Thornhill also spoke on the phone with a coworker of Darlene, who indicated she had not been to work in several days, and it was unusual for her to miss work.
¶ 4. After knocking on the door and receiving no response, Deputy Thornhill walked around the house and knocked on the windows. Deputy Thornhill testified he thought someone was in the house because he heard a noise from inside and saw a white car parked next to the house. Based upon Mand/s and Fulkerson’s concerns and the fact that Darlene had missed work for several days, Deputy Thornhill contacted Toney Rushing, an investigator, to get permission to enter the house. Deputy Thornhill then entered the house to search for Darlene. Deputy Thornhill eventually located Darlene’s body inside a large deep freezer in the kitchen. Darlene’s body was covered with a comforter and packs of frozen food. Deputy Thorn-hill lifted the corner of the comforter and saw long dark-colored hair and a human shoulder. Deputy Thornhill testified he then replaced the comforter, contacted Investigator Rushing, and secured the crime scene. A search warrant for Silvia’s house was subsequently obtained.
¶ 5. An alert was issued regarding Silvia’s car. Deputy Hollis Gatlin testified he stopped Silvia’s car and, as Silvia exited the ear, Silvia “told me he had done something really bad, and that he had lost his job, and his wife was going to leave him, so he shot her.” Silvia was transported to the sheriffs department. Because Silvia was intoxicated when he was arrested, he was not interviewed until the next day, June 11, 2010. Silvia waived his Miranda[2], rights, then admitted that he shot Darlene.
¶ 6. At trial, Silvia admitted to shooting Darlene; however, he testified he did not remember pulling the trigger. Silvia testified he and Darlene had been experiencing financial trouble since he lost his job and emotional stress since Darlene’s daughter died in a car accident. Darlene had wanted to separate, suggesting they foreclose on their home and sell their belongings. Silvia said Darlene offered him $1,000 to go home to Massachusetts. He testified that this occurred approximately two days prior to Darlene’s death. Silvia admittedly became angry and began drinking more heavily, stating the anger kept building and building inside of him. Silvia was also angry that Darlene had been in communication with her ex-husband concerning her daughter’s death and insurance policy.
¶ 7. When questioned about the actual shooting, Silvia testified that he was sitting in the living room with Darlene, and the next thing he remembered, he was standing in the doorway holding a shotgun and Darlene was dead. He stated he had no memory of shooting her. Darlene had been shot once in the neck and once in the abdomen. Silvia said he covered her body with a comforter, then went to sleep. The next day, Silvia moved Darlene’s body to the deep freezer, then attempted to clean the crime scene, including one of the couple’s dogs that had blood on it. Silvia stated he ran out of money, so he pawned the shotgun and a piece of Darlene’s jewelry, then proceeded to drink heavily and watch pornographic movies.
DISCUSSION
¶ 8. Silvia contends that the trial court erred by failing to conduct a competency *535 hearing. Prior to trial, Silvia requested a mental examination. The State agreed, and the trial court ordered Dr. Beverly Smallwood to conduct a mental examination to determine whether Silvia was competent to stand trial'and make a rational defense. The order also instructed Dr. Smallwood to determine whether Silvia was mentally capable of distinguishing between right and wrong at the time he committed the crime. A mental examination was conducted, but it appears there was no pretrial competency hearing. The record indicates that there were several attempts to schedule a competency hearing prior to trial.
¶ 9. On June 18, 2014, the State filed a motion to supplement the record with either a transcript of the competency hearing or, if no transcript was found, a statement of evidence in accordance with Mississippi Rule of Appellate Procedure 10(c). This Court granted the State’s motion. We ordered the trial court to determine whether the competency-hearing transcript was available and, if not, to conduct a hearing to determine whether the record could be supplemented pursuant to Rule 10(c). We ordered the transcript or the Rule 10(c) statement of evidence to be filed in the trial court within sixty days of June 24, 2014, the date of our order. We also gave the trial court sixty days to notify this Court if no transcript or Rule 10(c) statement could be made available.
¶ 10. According to the supplemental volume, the hearing was held in the trial court on August 11, 2014. The trial judge, the assistant district attorney (Timothy Jones), Silvia, and Silvia’s appellate counsel at the time (Phillip Broadhead), were present. During the hearing, Jones stated, “the State admits that there was no pretrial psychological hearing.” Since no hearing had been conducted, Broadhead asked the trial court to “make a finding to the Court of Appeals [that the] record cannot be supplemented according to [Rule] 10(c).” The trial court responded in the affirmative and asked Broadhead to prepare an order. Broadhead agreed. The order dated August 28, 2014, states that “no transcript of a competency hearing can be found, and further, the record cannot be supplemented pursuant to [Rule] 10(c).” We note that there is a copy of Dr. Smallwood’s mental examination of Silvia in the supplemental volume, which was filed with this Court on September 2, 2014. However, the record is unclear if the trial court received a copy of this report prior to Silvia’s trial. The only copy of the mental examination in the record was submitted at the hearing conducted pursuant to this Court’s June 24, 2014 order.
¶ 11. Uniform Rule of Circuit and County Court 9.06 states:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court....
In Sanders v. State, 9 So.3d 1132, 1136 (¶ 16) (Miss.2009), the Mississippi Supreme Court held that the “plain language” of Rule 9.06 requires “a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.” The supreme court also recently held that “when a motion for a mental examination has been granted, such an examination must occur, and then a separate competency hearing must be conducted before trial begins.” Coleman v. State, 127 So.3d 161, 166 (¶ 14) (Miss.2013) (emphasis in original). The State contends that a competency hearing was not required because it did not have a reasonable *536 ground to believe that Silvia was incompetent. However, the Coleman court stated that a trial court’s grant of an order for a mental examination is “conclusive of its having found reasonable ground to believe [the defendant] was entitled to a mental examination and a competency hearing, based on the plain and forthright language of Rule 9.06.” Id. at 168 (¶ 19).
¶ 12. In Smith v. State, 149 So.3d 1027, 1035 (¶ 19) (Miss.2014), the supreme court reversed and remanded for an evidentiary hearing to determine whether the trial court ordered Smith’s mental examination for the purpose of determining his competence to stand trial. The court found “significant ambiguity” regarding the reason for Smith’s mental examination. Id. The court stated that “if, after the evidentiary hearing, the trial court determines that the purpose of the court-ordered mental evaluation was to determine Smith’s competency to stand trial, Smith’s conviction cannot stand_” Id.
¶ 13. In this case, it is clear the trial court ordered the mental examination to determine whether Silvia was “mentally competent to stand trial and to make a rational defense, and whether ... he was mentally capable of distinguishing between right and wrong” at the time he committed the crime. The trial court attempted to schedule the competency hearing, but for reasons-unclear in the record, the hearing never occurred. Accordingly, we must reverse and remand for a competency- hearing and, if Silvia is found competent to stand trial, a -new trial.
¶ 14. THE JUDGMENT OF THE WALTHALL COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WALT-HALL COUNTY.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ„ CONCUR. CARLTON, J„ DISSENTS WITH SEPARATE WRITTEN OPINION. '

. Darlene was separated from her husband, George, when she met Silvia. Silvia testified Darlene and George finally signed their divorce papers shortly before Darlene died.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).