JAMES, J.,
dissenting:
¶ 44. Because the trial court failed to conduct a competency hearing mandated by Uniform Rule of Circuit and County Court Practice 9.06, after ordering two separate psychiatric evaluations, only one of which was actually performed, I respectfully dissent from the majority opinion. I would reverse the decision of the trial court, vacate Brown’s conviction, and he must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06. See Smith v. State, 149 So.3d 1027, 1035 (¶ 19) (Miss.2014).
¶ 45. On July 20, 1999, Brown filed a motion for psychiatric assistance. On the same day, the trial court entered an order for a psychological examination, compelling Brown to undergo an examination at the psychiatric department of the Mississippi State Hospital. The order provided in part: “The Court has sufficient cause to believe that a psychological report on the defendant would be helpful to the Court in determining what disposition should be made of the above stated case.” The order requested that the “psychiatrists include in their report: (1) a psychological analysis of [Brown]; (2) an opinion as to whether [Brown] is mentally capable of standing trial; and (3) whether [Brown] is in need of in-patient hospitalization.”
¶ 46. On October 25, 1999, a staff psychiatrist at the Mississippi State Hospital' faxed a request for information to Brown’s attorney, James O. Ford. The request included information such as the trial .court’s order for evaluation, the motion requesting the evaluation or statement giv *337 ing reasons why the examination was sought, prior psychiatric/psychological examinations or treatment, a statement describing the defendant’s behavior in jail, a list of the medications the defendant was taking, and names of family members. The request stated that once the information was received, the hospital would schedule the evaluation. It appears that the Mississippi State Hospital never received the requested information, and the evaluation was not scheduled. However, it is clear that this court-ordered psychological examination never occurred.
¶ 47. On November 12, 1999, the State filed a motion for a psychiatric examination. The State moved for a psychiatric examination of Brown
for the purpose of determining whether, by reason of some defect, disease, or condition óf the mind or memory (1) the defendant is able to comprehend the nature of the charges against him and rationally aid in his defense; and (2) at the time of the commission of the crime herein charged, the defendant was of such mental capacity as to distinguish between right and- wrong; [and] (3) whether under the conditions [the] defendant was being subjected to on and before January 22, 1999, he was able to . form the intent necessary under the law to be responsible for the act of which he is accused; and (4) to determine as to. the murder charges whether[,] as to this defendant under the conditions he suffered[,] ... malice could be implied “where no considerable provocation appears.”
The State alleged the cause in support of the motion was that “the defendant may claim in the past he has exhibited a history of some degree of mental illness” and “that the defendant has indicated through his attorney that a mental type defense will be used in the trial of this matter.” Further, the motion provided “that it is necessary for the State to examine the capacity of the defendant by a . competent mental health professional in order to properly try this cause.” .
¶ 48. On the same day, the trial court granted the State’s motion and entered an order compelling Brown to undergo a competency exam to be performed by Dr. Criss Lott. The order provided in part:
The cause this day came for hearing on Motion of the State of Mississippi for an Order for a psychiatric examination of the above named defendant in this case, for the purpose of determining whether, by reason of some defect, disease, or condition of the mind or memory (1) the defendant is able to comprehend the nature of the charges against him and rationally aid in his defense; and (2) at the time of the commission of the crime herein charged, the. defendant was of such mental capacity as to distinguish 'between right and wrong; and[](3) whether under the conditions [the] defendant was-being subjected to on and before January 22, 1999, he was .able to form the intent necessary under -the law to be responsible for the act of which he is accused; and (4) to determine as to the murder charges whether[,] as .to this defendant under the conditions he suffered[,] ... malice could be implied “where no considerable provocation appears.” ;•
¶ 49. ■ On November 14, 1999, Dr. Lott conducted a psychological -evaluation of Brown and prepared a report of his findings. On November 19, 1999, Dr. Lott’s report was sent to the circuit court judge. Dr. Lott acknowledged in his report each of the stated purposes of the court-ordered evaluation report. In his report, Dr. Lott concluded: “It is-my opinion, to a reasonable degree of psychological certainty, that Mr. Brown has the sufficient presént abili *338 ty to confer with his attorney with a reasonable degree of rational understanding^] and he has a good factual and rational understanding of the nature and object of the legal proceedings against him.” However, a separate competency hearing was never conducted.
¶ 50. • On November 29, 1999, the trial court conducted a plea hearing. The trial court asked- Brown if he was under the influence of drags or alcohol. Brown replied, “No, sir.” As somewhat of an afterthought, the State mentioned that a clinical psychologist,- Dr. Lott, examined Brown and found him competent to stand trial. The judge confirmed that he had “seen” Dr. Lott’s report. However, the prosecutor informed the court that he did not believe the report had been filed and that he would file the report following the conclusion of the plea hearing. Without the report having been filed, the trial court accepted Brown’s' guilty plea as knowingly, freely, understanding^, and voluntarily entered,- ;and sentenced him' to life in prison for murder and twenty years for manslaughter, to-ran concurrently with the life sentence. -
'T51. Although'Brown’s PCR motion is procedurally barred, “errors affecting fundamental constitutional rights are excepted from the procedural bars of the [Uniform Postconviction Collateral Relief Act],” Rowland v. State, 42 So.3d 503, 507 (¶ 12) (Miss.2010). “[T]he prohibition against trying or convicting an incompetent defendant is fundamental to an adversary system of justice,”. Smith, 149 So.3d at-1031 (¶ 8) (citing Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975)). “The constitutional right not , to be tried or convicted while incompetent is a component of a defendant’s due-process right to a fair trial.” Id. (citing Pate v. Robinson, 383 U.S. 375, 385, 86 S.Ct. 836, 15, L.Ed.2d 815 (1966)). “When the evidence raises sufficient doubt as to the defendant’s competency to stand trial, the defendant is deprived of due process of law if the trial court fails to conduct a separate competency hearing.” Id. at 1033 (¶ 15) (citing Pate, 383 U.S. at 385, 86 S.Ct. 836).
¶ 52. “Rule 9.06 of the Uniform Rules of Circuit and County Court Practice clearly delineates the procedure for a trial court’s determination of whether a potentially incompetent criminal defendant is mentally competent to stand trial.” Coleman v. State, 127 So.3d 161, 168 (¶ 20) (Miss.2013). “Rule 9.06 is meant to ensure that a defendant’s due process rights are not violated.” Id. at 166 (¶ 13). Rule 9.06 provides in pertinent part:
If before or during trial the court, , of its own motion, or upon motion of an. attorney, has. reasonable ground to believe that the defendant is incompetent to stand trial, the court, shall order the defendant to submit to a mental examination by some., competent psychiatrist selected by the court in accordance with § 99-13-11 of .the Mississippi Code Annotated of 1972.
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial. If the court finds that the defendant is incompetent to stand trial, then the court shall commit the defendant to the Mississippi State Hospital or other appropriate mental health facility.
(Emphasis added). .
¶53. Simply.put, “once the trial court has.reasonable ground to believe the de *339 fendant is . incompetent, Rule 9.06 mandates that the trial court shall , order a mental evaluation followed by a competency hearing to determine whether the defendant is competent to stand trial.” Smith, 149 So.3d at 1033 (¶ 16). “In the face of this plain language [of Rule 9.06], it is evident that it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.” Sanders v. State, 9 So.3d 1132, 1136 (¶ 16) (Miss.2009).
¶ 54. • Here, the majority clings to the “reasonable ground” language; however, the trial court already ordered not one, but two mental examinations. Whether a mental examination is ordered or not hinges on whether a reasonable ground exists to order an examination. The competency hearing, on the other hand, is mandated. Rule 9.06 clearly states that “after the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial.” ' (Emphasis added). The language of Rule 9.06 leaves no room for discretion on whether or not to conduct a competency hearing once the trial court orders a mental examination. Here, the trial court ordered two mental examinations, only one of which actually occurred, and did not conduct a single competency hearing. As a result, Rule 9.06 was violated.
¶55. In Sanders, the. trial court ordered a mental evaluation of the defendant to determine his competency to stand trial. Sanders, 9 So.3d at 1134 (¶ 8). The Mississippi Supreme, Court held: “By finding that- [the defendant’s] motion for psychiatric .examination was well, taken and granting it, the trial court necessarily determined that, some, if not all, of the assertions in [the defendant’s] motion were sufficient to order-a-psychiatric examination of. [the defendant].” Id. at 1137 (¶ 18). •
¶ 56. In Coleman, the defendant filed a motion for a psychiatric examination and/or treatment. Coleman, 127 So.3d at 168 (¶20). The trial court granted the motion and the defendant submitted to the court-ordered examination. Id. However, the trial court did not hold a separate and timely hearing to determine the defendant’s competence to stand trial. Id. The Court held: “The trial court’s grant of [the defendant’s] motion was conclusive of its having found [a] reasonable ground to believe that [the defendant] was entitled to a mental examination and a competency hearing, based on the plain and forthright language of Rule 9.06.” Id. at (¶19). Mpreover, “[o]nce a mental health evaluation has occurred, the trial court must hold a separate competency hearing before the trial begins.” Id. at (¶20). Because the trial court failed to hold a separate competency hearing under Rule- 9.06, the court remanded the case to the trial court for a new trial. Id. -at 162 (¶ 2).
¶ 57. Similarly, the trial court’s grant of Brown’s and the State’s motions for mental examinations was conclusive of its having found a reasonable ground that Brown was entitled to a mental examination and competency hearing. Only the court-ordered examination entered on the State’s motion for a psychiatric examination actually occurred.’ The court-ordered examination to take place at the Mississippi State Hospital never occurred. The majority notes that the orders did not specifically state that reasonable grounds exist to believe Brown was" incompetent at the time, but the orders themselves are conclusive of the trial court’s having found a reasonable ground. Id. at 168 (¶ 19).
¶ 58. The majority finds that nothing in the plea-hearing transcripts indicates that the trial court should have been alerted *340 Brown might be suffering from mental issues. I disagree. Although Brown represented to the court during the plea colloquy that he was not under the influence of any medication, medical records and Dr. Lott’s report reveal that Brown was receiving medication. Specifically, Brown was prescribed a psychotropic antidepressant, elavil (generic name: amitriptyline), by Dr. Dale L. Wing on September 24, 1999. Dr. Wing started Brown on twenty-five milligrams of elavil. At the time of Dr. Lott’s evaluation, Brown’s dosage had been increased to fifty milligrams. Notably, Dr. Lott’s evaluation was not filed with the trial court prior to his plea hearing. Dr. Lott’s report clearly stated that Brown was on medication, contrary to his representation to the trial court. The trial court did not question this misrepresentation despite having “seen” the report, which plainly revealed the inconsistency. Moreover, Dr. Lott’s report states that Brown cut his wrists in jail prior to trial; however, this alleged suicide attempt was not discussed during the plea colloquy. The prescribed psychotropic medications and the wrist cutting certainly should have alerted the trial court that Brown might be suffering from some mental issues. Nonetheless, even one court-ordered examination for the purpose of determining the defendant’s competency is conclusive of the trial court’s having reasonable grounds to doubt Brown’s competency and entitles Brown to a competency hearing based on the plain language of Rule 9.06. See Coleman, 127 So.3d at 168 (¶ 19).
¶ 59. In Smith, on the day of trial, the defendant orally moved for a continuance and a psychiatric examination. Smith, 149 So.3d at 1029 (¶2). The trial court entered an order compelling the defendant to undergo a psychiatric evaluation. Id. at 1030 (¶ 2). The record was unclear as to why the 'trial court entered the order. Id. at 1034 (¶ 18). The examination was never done, and the defendant later pled guilty. Id.- at 1029-30 (¶ 2). Because of the ambiguity surrounding the reason the trial court ■ ordered a mental examination, the Court remanded the case for an evidentia-ry hearing. Id. at 1031 (¶ 9). The- Court concluded that “if, after the evidentiary hearing, the trial court determines that the purpose of the court-ordered mental evaluation was to determine Smith’s competency to stand trial, Smith’s conviction cannot stand, and Smith must be either retried or institutionalized following a mental evaluation and competency hearing under Rule 9.06.” Id. at 1035 (¶ 19). Here, both orders unambiguously state that a purpose of the mental examinations was to determine Brown’s competency to stand trial.
¶ 60. The majority seems to find that Brown waived his claim of incompetency for failing to raise it at the plea hearing. However, the United States Supreme Court in Pate, 383 U.S. 375, 86 S.Ct. 836, held that “it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently” waive his right to have the court determine his capacity to stand trial.
¶ 61. The majority, relying on the holding in Manning v. State, 929 So.2d 885, 898-99 (¶ 35) (Miss.2006), holds that Sanders does not apply retroactively because it announced a procedural rule. The majority concludes that Sanders’s requiring a competency hearing did not control at the time Brown entered his guilty plea. I disagree. The Mississippi Supreme Court applied the holding in Sanders retroactively in a PCR case where the movant was convicted in 1999. See Goodin v. State, 102 So.3d 1102, 1105, 1118-19 (¶¶3, 48-50) (Miss.2012). The majority distinguishes Goodin from this case by finding that the movant in Goodin claimed ineffective assistance of counsel because the defense attorney failed to ensure that the defendant was afforded a competency hearing, which was required by Rule -9.06. Consequently, *341 under the majority’s view, Brown' could circumvent this retroactive bar, and would be better served by filing a PCR motion alleging ineffective assistance of counsel, essentially alleging the same set of facts, but assigning error on the part of his counsel rather than the trial court for failing to comply with Rule 9.06. I would not hold that Sanders applies retroactively depending on the label of the claim.
¶ 62. Moreover, “[a] rule which is not enforced is no rule.” Patton v. State, 34 So.3d 563, 571 (¶ 24) (Miss.2010) (quoting Box v. State, 437 So.2d 19, 21 (Miss.1983)). “And when a rule that we promulgated says a trial court ‘shall’ do a thing, justice and fairness demand that, absent extremely unusual circumstances, ■ we either ■ require trial courts to do it, or change the rule.” Id. at 572 (¶ 25). Rule 9.06 was in effect at the time of Brown’s guilty plea. The rule was adopted effective May 1, 1995. It is undeniable that the trial court failed to comply with the mandatory requirements of Rule 9.06.
¶ 63. In any event, the trial court never held a competency hearing, which is -required by the “shall” language of Rule 9.06. Consequently, the trial court’s failure to hold a separate competency hearing despite ordering two examinations prior to Brown’s guilty plea was a violation of his constitutional right to due process of law and is reversible error. Thé appropriate remedy for failure to hold a competency hearing is a new trial, not a retrospective competency hearing. See Coleman, 127 So.3d at 168 (¶ 20). Therefore, I would reverse the decision of the trial court, vacate Brown’s conviction, and he must be either retried or institutionalized following a mental evaluation and competency hear: ing under Rule 9.06.