LEE, C.J., for the Court:
FACTS AND PROCEDURAL HISTORY
¶ 1. On June 6, 2010, Thomas Sanchez and Matthew Rickman broke into Wolfgang Netsch’s home in Picayune, Mississippi. The men attacked, shot, and robbed Netsch. Netsch survived and identified Rickman as one of his attackers.
¶ 2. Rickman was indicted by a Pearl River County grand jury for armed robbery, aggravated assault, and possession of a firearm by a convicted felon. On January 26, 2012, the trial court ordered psychiatrist Dr. Albert B. DeVillier to conduct a forensic mental evaluation of Rickman’s competency and determine if Rickman (1) understood the nature of the proceedings against him; (2) had the ability to assist his attorneys in his defense; and (3) understood “the difference between right and wrong in relation to his actions at the time under the M’Naughton rule.”
¶ 3. Dr. DeVillier evaluated Rickman on February 6, 2012, and filed his report with the trial court on February 21, 2012. Dr. DeVillier reported that Rickman had been diagnosed with epilepsy. Rickman also mentioned having visual, but not auditory, hallucinations. Rickman stated that he had been on Tegretol, a seizure medication, but he had not taken it in quite some time. At the time of the evaluation, Rickman was on the antidepressant Zoloft. Although Rickman was prescribed the an-tipsychotic drug Risperdal, he refused to take it because it made him “too sleepy.”
¶ 4. Dr. DeVillier noted that Rickman’s judgment indicated some significant paranoia. In the Axis I portion of the “Diagnosis” section of the report, Dr. DeVillier stated “Rule Out Schizoaffective.”
¶ 5. While he could not determine Rick-man’s mental state at the time of the crime, Dr. DeVillier came to a conclusion about Rickman’s mental state at the time of the evaluation.
It is my opinion that Mr. Rickman has [a] good factual and rational understanding of the nature and object of the legal proceedings against him. However, at the present time I feel he does not have the mental stability to confer in a reasonable manner with his attorney or behave in the courtroom without becoming disruptive. He does understand the charges against him and possible conviction if found guilty.
[[Image here]]
It is my opinion that Mr. Rickman has a mental and neurological condition.
[[Image here]]
In my opinion Mr. Rickman should be reprimanded [sic] to the State of Mississippi Forensic Psychiatric Unit in Whitfield, MS, until such time through evaluation and treatment, that he is able to be cooperative in a reasonable manner with his attorney and all other major participants in the court proceedings.
¶ 6. Rickman’s competency hearing was held on February 21, 2012. Neither the State nor Rickman called any witnesses, but Dr. DeVillier’s report was admitted into evidence. The trial court questioned Rickman about his understanding of the charges and the proceedings. At the conclusion of the questioning, the trial court found that Rickman was able to
• perceive and understand both the proceedings and the charges against him;
• communicate with his attorneys, when given the opportunity;
• recall “at least what he read about the charges against him”;
• recognize that he had the right to testify in his own defense; and
*963 • satisfy the requirements under Jay v. State, 25 So.3d 257 (Miss.2009).
Turning to Dr. DeVillier’s report, the trial court noted, “And perhaps most importantly, the diagnosis ruled out schizoaf-fective personality disorder or disease. Schizophrenia being a disease that in this court’s opinion may have a direct impact and bearing upon the defendant’s ability to rationally think and help his attorneys prepare for his case.” The trial court then found Rickman competent to stand trial.
¶ 7. Rickman was tried and convicted on all three counts. He was sentenced as a habitual offender to serve life imprisonment without the possibility of parole for armed robbery, ten years for aggravated assault, and one year for possession of a firearm by a convicted felon, all to be served in the custody of the Mississippi Department of Corrections. The trial court denied Rickman’s subsequent post-trial motions. He now appeals.
DISCUSSION
¶ 8. Rickman raises four arguments on appeal: (1) “the trial court erred when it determined that Rickman was competent to stand trial despite all medical evidence indicating that Rickman was unable to assist in his defense”; (2) “Rickman was improperly sentenced as a habitual offender under Mississippi Code Annotated section 99-19-88”; (3) “the State presented insufficient evidence to convict Rickman of being a felon in possession of a prohibited weapon”; and (4) “Rickman is entitled to a new trial under the doctrine of retroactive misjoinder.” We will only address the first issue, as it is dispositive.
¶ 9. Rule 9.06 of the Uniform Rules of Circuit and County Court governs how the trial court proceeds if competency is at issue. The rule states in pertinent part:
If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with [section] 99-13-11 of the Mississippi Code Annotated of 1972.
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
URCCC 9.06.
¶ 10. When this Court examines a trial court’s determination of competency, our analysis is centered around three questions: (1) did the trial court objectively consider the information it received; (2) should that information reasonably have caused doubt about the defendant’s competency; and (3) should that information have “alerted [the trial court] to the possibility that the defendant could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense?’ ” Goff v. State, 14 So.3d 625, 644 (¶ 66) (Miss.2009) (internal quotations omitted).
¶ 11. Since no witnesses were called, the trial court relied on Dr. DeVillier’s report, as well as Rickman’s answers to the court’s questions and his demeanor in court, to determine Rickman’s competency. The transcript is clear that the trial court found Dr. DeVillier’s determination of “Rule Out Schizoaffective” in the diagnosis section of the report to be very persuasive. The trial court interpreted the phrase *964 “Rule Out Schizoaffective” to mean that Dr. DeVillier “ruled out schizo[a]ffective personality disorder or disease.”
¶ 12. Crucially, the term “rule out,” as it relates to a diagnosis, does not mean that the doctor ruled it out. In United States v. Grape, 549 F.3d 591, 593 n. 2 (3d Cir.2008), the court noted:
A “rule-out” diagnosis ... means there is “evidence that the patient may meet the criteria for that diagnosis, but the doctors need more information to rule it out.” In other words, there is reason to suspect the presence of a “rule-out” psychotic disorder, but the doctor would not be comfortable giving such a diagnosis at that time.
¶ 13. The trial court misinterpreted the term “rule out,” even going so far as to say, “Schizophrenia being a disease that in this court’s opinion may have a direct impact and bearing upon the defendant’s ability to rationally think and help his attorneys prepare for his case.” Had the term “rule out” in Dr. DeVillier’s report been appropriately interpreted, this information reasonably would have caused doubt about Rickman’s competency. Additionally, Dr. DeVillier stated in his report multiple times that he doubted Rickman’s ability to effectively communicate with his attorneys. This finding combined with the “Rule Out Sehizoafffective” diagnosis should have “alerted [the trial court] to the possibility that [Rickman] could neither understand the proceedings, appreciate their significance, nor rationally aid his attorney in his defense[ ].” Goff, 14 So.3d at 644 (¶ 66) (internal quotations omitted).
¶ 14. Rule 9.06 mandates that a competency hearing occur “before or during the trial[.]” See also Coleman v. State, 127 So.3d 161, 168 (¶ 18) (Miss.2013) (“A retrospective competency hearing is not mentioned or even suggested by Rule 9.06[.] ... Thus, such an innovation should not be condoned by this Court. It is neither prudent nor permissible for our trial courts, in them implementation of Rule 9.06, to deny a timely hearing on the accused person’s mental competence to stand trial, to proceed to trial, and then attempt later to remediate the omission by conducting an extremely untimely mental competency hearing.”) Because Rule 9.06 does not contemplate a retrospective competency hearing, Rickman must be granted a new competency hearing. If the court determines him to be competent, the court should proceed with a new trial.
¶ 15. Therefore, we reverse the trial court’s ruling and vacate the conviction. We remand this case for a new competency hearing, and if the trial court finds Rickman competent, a new trial.
¶ 16. THE JUDGMENT OF THE PEARL RIVER COUNTY CIRCUIT COURT IS VACATED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO PEARL RIVER COUNTY.
IRVING AND GRIFFIS, P.JJ., ISHEE, MAXWELL, FAIR AND JAMES, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY. ROBERTS, J, CONCURS IN PART AND IN THE RESULT. CARLTON, J., NOT PARTICIPATING.