MAXWELL, J,
for the Court:
¶ 1. Mississippi has adopted Uniform Rule of Circuit and County Court 9.06 as a procedural safeguard to ensure an accused is competent to stand trial. Johnny James Jr. was convicted in the Newton County Circuit Court of the statutory rape of a twelve-year-old girl. On appeal, he argues his procedural due-process rights were violated because the trial court did not comply with Rule 9.06.
¶ 2. We find the retrospective competency hearing ordered by this court satisfies the requirements of procedural due process and the purpose of Rule 9.06. We also find no reversible error in the trial court’s overruling James’s objections to the State’s leading questions and that the weight of the evidence supports James’s conviction. For these reasons, we affirm James’s conviction and sentence.
FACTS AND PROCEDURAL HISTORY
I. The Rape
¶ 3. S.L. is a young cousin of James.[1] In May 2007, S.L. was twelve years old, while James was twenty six.
¶4. On the night of May 25, 2007, a relative dropped S.L. and her younger brother off with James and Roger Huddle-ston, who were riding around Newton County in a pickup truck collecting aluminum cans. At some point, the group took a break and parked the truck. S.L. testified that while Huddleston went to the woods to relieve himself, James told her to “give me some or we are not going home.” S.L. understood this to mean James wanted to have sex with her. Upset, S.L. took off running down the dirt road.
¶ 5. According to S.L., James caught up with her at a point outside of eyesight from the truck. He forced S.L. to the ground and pulled down her elastic-waist pajama pants and panties. S.L. testified that, despite telling James to stop, James put his penis in her vagina and then rolled her over and penetrated her bottom. James eventually released S.L. when she said she had to go to the bathroom. Once off the ground, S.L. took off running toward the truck.
¶ 6. Huddleston testified that, when he came back to the truck, he could not find James or S.L. A few moments later he heard S.L. screaming from a distance. When S.L. came back to the truck, Hud-dleston noticed she had been crying and appeared disheveled. S.L. immediately told Huddleston James had raped her.
¶ 7. S.L. testified that the group drove back to James’s mother’s house, where S.L. was staying. S.L. testified she had been bleeding and had to throw away her panties. She also testified she told James’s mother, Brenda, that night about the rape. But Brenda did not notify the authorities. In June 2007, S.L. told Brenda about a separate incident in which Hud-dleston had fondled her. Again, Brenda did not report S.L.’s allegations.
¶ 8. In July, S.L.’s mother took S.L. to the Department of Human Services. A *290 DHS employee interviewed S.L., who provided a written account of the rape. S.L.’s parents then reported the rape to the Newton County Sheriffs Office. S.L. testified she had not told her parents earlier about the rape because she was afraid her father would try to hurt James, and she did not want her father to go to jail if he did.
¶ 9. Huddleston pled guilty to gratification of lust, agreeing as part of his plea to testify about what happened the night of May 25, 2007. James was charged with statutory rape.
II. The Trial
¶ 10. James was tried on August 19, 2008. His counsel did not argue James was not competent to stand trial. Nor did his attorney seek to continue the trial until James’s competency could be determined. James was convicted of statutory rape and sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, to be served day for day.
¶ 11. James filed a post-trial motion for a judgment notwithstanding the verdict or new trial, raising the issues of weight of the evidence, inadmissible hearsay, failure to grant his proposed jury instruction, and failure to grant his motion in limine. He did not assert he was entitled to a new trial because he had not been declared competent before the August 19, 2008 trial.
¶ 12. The trial judge denied his motion, and James timely appealed. On appeal, James argues the trial judge erred by not holding a pre-trial competency hearing and making an on-the-record determination that James was competent to stand trial. See URCCC 9.06. The record contained a motion for psychiatric exam, submitted by James’s attorney, Shawn Harris. Harris attached an affidavit in support of the examination, in which Harris stated he had consulted with “Robert B. Evans” several times and believed the defendant was not competent to stand trial. The trial judge granted the motion. The record contained two orders rescheduling the psychiatric exam, the last scheduling the exam on August 4, 2008, two weeks before trial. The record was silent about whether such an exam ever took place. The next recorded action was James’s August 19, 2008 trial, in which Christopher Collins, and not Harris, represented James. At no point did Collins raise his client’s incompetency to stand trial.
¶ 13. Because of the uncertainty in the record, on August 11, 2011, this court ordered this case be remanded to circuit court (1) for a hearing to determine whether Harris had intended to seek a psychiatric evaluation of James and, if so, (2) for a nunc pro tunc, or retrospective, competency hearing to determine whether James was competent to stand trial in August 2008.
¶ 14. On October 12, 2011, the trial judge heard testimony from Harris. Harris testified he had sought an evaluation of James and the reference to “Robert B. Evans” in the motion was a typographical error. Harris testified James was examined by a psychiatrist prior to trial and that Harris had received the psychiatrist’s report, which found James was competent. Harris testified he did not try James’s case, another public defender did.
¶ 15. Satisfied James had sought a mental evaluation under Rule 9.06, the trial judge then heard testimony on James’s competency to stand trial from Dr. Mark Webb, the psychiatrist who evaluated James in August 2008. In Dr. Webb’s report, he opined James was competent to stand trial and was not criminally insane at the time of the crime. The report was introduced into evidence. Dr. Webb testified he held the same opinion as he did in *291 August 2008, when he made the report. Dr. Webb testified that, while he did not keep a record of his correspondence, his protocol after making such a report was to send a copy to the defendant’s attorney, the district attorney’s office, and the clerk’s office. James’s counsel cross-examined Dr. Webb about his report and James’s family and mental history. On December 13, 2011, the trial judge issued an order finding James was competent to stand trial on August 19, 2008.
DISCUSSION
¶ 16. James raises three issues on appeal. He argues (1) his constitutional rights were violated by the trial judge’s failure to comply with Rule 9.06 and not conducting an on-the-record competency hearing prior to his August 19, 2008 trial; (2)the trial judge committed reversible error by overruling objections to leading questions; and (3) the trial judge committed reversible error by denying his motion for new trial. We find no reversible error and affirm the judgment of conviction and sentence.
I. Competency Hearing
¶ 17. In Mississippi, a legally competent defendant is one “(1) who is able to perceive and understand the nature of the proceedings; (2) who is able to rationally communicate with his attorney about the case; (3) who is able to recall relevant facts; (4) who is able to testify in his own defense if appropriate; and (5) whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case.” Howard v. State, 701 So.2d 274, 280 (Miss.1997) (overruled on other grounds) (citation omitted); see Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam) (defining the test for competency as “whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him”).
¶ 18. “[T]he conviction of an accused person while he is legally incompetent violates due process[.]” Pate v. Robinson, 383 U.S. 375, 378, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) (citing Bishop v. United States, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956)). “To safeguard that due process guarantee, the [United States] Supreme Court announced in Pate ... a separate procedural due process right to a competency hearing whenever the facts or events presented to the trial court raise a bona fide doubt as to the defendant’s competency.” Reese v. Wainwright, 600 F.2d 1085, 1091 (5th Cir.1979). Pate held that when the evidence raises this bona fide doubt, the court’s failure to inquire sua sponte into the issues of competency deprives the defendant of his constitutional right to a fair trial. Pate, 383 U.S. at 385, 86 S.Ct. 836.
¶ 19. James argues his constitutional rights were violated because he was not afforded the procedural safeguard of a competency hearing prior to his August 2008 trial. Because we find the retrospective competency hearing cures the procedural violation under Pate and substantially complies with the purposes of Rule 9.06, we find no reversible error in the trial court’s failure to conduct a competency hearing prior to trial.
A. Rule 9.06
¶ 20. Under Pate, states must have adequate procedures to ensure a defendant is competent to stand trial. Lokos v. Capps, 625 F.2d 1258, 1261 (5th Cir.1980) (citing Pate, 383 U.S. at 378, 86 S.Ct. 836). Mississippi has adopted Rule 9.06:
*292 If before or during trial the court, of its own motion or upon motion of an attorney, has reasonable ground to believe that the defendant is incompetent to stand trial, the court shall order the defendant to submit to a mental examination by some competent psychiatrist selected by the court in accordance with § 99-13-11 of the Mississippi Code Annotated [ (Rev.2007) ].
After the examination the court shall conduct a hearing to determine if the defendant is competent to stand trial. After hearing all the evidence, the court shall weigh the evidence and make a determination of whether the defendant is competent to stand trial. If the court finds that the defendant is competent to stand trial, then the court shall make the finding a matter of record and the case will then proceed to trial.
¶ 21. Under this rule, if a trial court, before or during trial, “has reasonable ground to believe that the defendant is incompetent to stand trial,” the court must order a mental evaluation by a psychiatrist and conduct an on-the-record competency hearing. Id. So, our preliminary question is whether the trial court had “reasonable grounds” to believe James was incompetent, triggering the procedural requirements of Pate and Rule 9.06.
¶ 22. In 2009, the Mississippi Supreme Court handed down a pair of decisions, Jay v. State, 25 So.3d 257 (Miss.2009) and Sanders v. State, 9 So.3d 1132 (Miss.2009), which relate to our inquiry. In Sanders, the plurality of the court held “it would be error not to hold a competency hearing once a trial court orders a psychiatric evaluation to determine competency to stand trial.” Sanders, 9 So.3d at 1136 (¶ 16). “By finding that Sanders’s motion for psychiatric examination was well taken and granting it, the trial court necessarily determined that some, if not all, of the assertions in Sanders’s motion were sufficient to order a psychiatric examination of Sanders.” Id. at 1137 (¶ 18). In Jay, a unanimous supreme court held “the trial court clearly had reasonable grounds to believe Jay was incompetent to stand trial, as evidenced by the order for a psychiatric evaluation.” Jay, 25 So.3d at 262 (¶ 29). In both cases, the supreme court held the trial court had to conduct a competency hearing after ordering a mental evaluation. Id. at 262-63 (¶ 57 30-34); Sanders, 9 So.3d at 1136-37 (¶ 57 16-18).
¶ 23. Here, based on the trial record as originally submitted, it was not clear as in Jay whether the trial court had reasonable grounds to grant a mental evaluation. In Jay, the motion for psychiatric evaluation stated the defendant had suffered traumatic brain injury. Attached to the motion was a letter from the defendant’s doctor stating that, due to the injury, the defendant suffered from cognitive deficits and would be unable to participate in any court proceedings. Jay, 25 So.3d at 261-62 (¶ 26). In Sanders, the motion for evaluation asserted the defendant had exhibited destructive behavior since being shot in the head. Attached to the motion was an affidavit by the attorney stating he believed the defendant was of insufficient soundness of mind to make a rational defense. Sanders, 9 So.3d at 1137 (¶ 18).
¶ 24. James’s motion for psychiatric evaluation referred the court to an attached affidavit and generically asserted: “Because of the Defendant’s present actions and history, it is submitted that he should be ordered for psychiatric examination, observation, and evaluation.” But the attached affidavit confusingly stated James’s attorney “has consulted with Robert B. Evans seve[ra]l times, [and] that this attorney believes said Defendant is of insufficient soundness of mind to make a rational defense[.]” Because the record *293 left unclear whether James’s attorney, Harris, was asserting reasons to believe James was incompetent, we ordered the trial court conduct an evidentiary hearing. At this hearing, Harris testified he had intended to have James evaluated and the reference to “Robert B. Evans” was a typographical error. While Harris could not remember the specific reasons for filing the motion, he testified “something had occurred that we felt it was best to ... have [James] examined before he went to trial.” Harris testified his office did not routinely file motions for evaluation. Instead, “it’s generally something pretty significant[.]”
¶ 25. Based on Harris’s testimony that he believed reasons existed for James to be evaluated for competency prior to trial and the trial court’s grant of that motion, we find the trial court had reasonable grounds to believe James was incompetent. Thus, the trial court’s failure to conduct a competency hearing was both a procedural due-process violation, or a Pate violation, and a failure to comply with Rule 9.06.
B. Nunc Pro Tunc Hearing
¶ 26. At the evidentiary hearing, if the trial court was satisfied reasonable grounds existed to order the mental evaluation of James under Rule 9.06, we ordered the trial court to then conduct a nunc pro tunc, or retrospective, hearing concerning James’s competency in 2008.
¶27. Once a Pate violation has occurred, the question becomes whether an adequate hearing can be held to determine the defendant’s competency at the time of his trial. Wheat v. Thigpen, 793 F.2d 621, 630 (5th Cir.1986). The United States Court of Appeals for the Fifth Circuit, though “acutely aware of the hazards connected with retrospective competency hearings,” nevertheless “has repeatedly sanctioned nunc pro tunc proceedings where there is sufficient data available to guarantee reliability.” Id. (quoting United States v. Makris, 535 F.2d 899, 904 (5th Cir.1976)); see also People v. Ary, 51 Cal.4th 510, 120 Cal.Rptr.3d 431, 246 P.3d 322, 329 (2011) (acknowledging the majority of courts agree the failure to hold a competency hearing at'the time of trial can be cured retroactively). The Fifth Circuit recognizes “contemporaneous expert medical evidence often provides the most useful evidence” of whether a meaningful retrospective hearing may be held. Wheat, 793 F.2d at 630 (quoting Makris, 535 F.2d at 904); see Lokos v. Capps, 625 F.2d 1258, 1262 (5th Cir.1980) (asking whether “the tools of rational decision are now available”).
¶ 28. This court ordered an evi-dentiary hearing to determine if the tools for holding a meaningful retrospective hearing were available — namely, to determine whether a contemporaneous mental evaluation was conducted. At that hearing, Dr. Webb testified he had evaluated James the month of his trial, and James’s attorney testified he had received Dr. Webb’s report. Dr. Webb’s report was produced at this hearing, giving the trial court “the most useful evidence” of James’s competency in 2008. See Wheat, 793 F.2d at 630. Thus, we find under the circumstances, there was sufficient information to make the retrospective hearing meaningful, curing the violation of James’s procedural due-process rights.
¶ 29. We also find the retrospective hearing substantially complied with Rule 9.06. In Hearn v. State, the Mississippi Supreme Court found “the trial court failed to comply in the strictest technical sense with Rule 9.06[.]” Hearn v. State, 3 So.3d 722, 730(19) (Miss.2008). But because the doctor who evaluated the defendant testified at trial about the defendant’s competency and was subject to cross-ex- *294 animation and because the defendant was afforded the opportunity to present competing evidence, “the purposes of Rule 9.06 were satisfied.” Id. But see Sanders, 9 So.3d at 1139-41 (¶ 57 28-37) (Kitchens, J., concurring in resulting only) (advocating overruling Hearn and requiring strict compliance with URCCC 9.06).
¶ 30. At the retrospective hearing, Dr. Webb testified that he had observed and evaluated James in August 2008. In his 2008 report, the doctor found James competent to stand trial — an opinion James’s trial attorney neither contested before or during trial. James’s current attorney cross-examined Dr. Webb on the bases for his findings and information in his report concerning James’s mental history. As in Hearn, we find the purposes of Rule 9.06 — to provide a procedural safeguard against a due-process violation by providing James the opportunity to present evidence of his incompetency — were satisfied. See Hearn, 3 So.3d at 730 (¶ 19).
¶ 31. Based on Dr. Webb’s testimony, the trial court found James was competent to stand trial on August 19, 2008. Because there was no evidence James was incompetent in August 2008, we affirm the trial court’s finding, as it was not “manifestly against the overwhelming weight of the evidence.” Bridges v. State, 807 So.2d 1228, 1230 (¶ 10) (Miss.2002) (quoting Emanuel v. State, 412 So.2d 1187, 1189 (Miss.1982)).
II. Leading Questions
¶ 32. James argues the trial judge abused his discretion by overruling James’s objection to the State’s leading questions to two of its witnesses without first having the witnesses declared hostile or adverse. We review the direct examination of Huddleston only. James made no objections to questions presented to S.L. as being leading. Thus, he has waived any objection on appeal.[2] Jackson v. State, 832 So.2d 579, 581 (¶ 3) (Miss.Ct.App.2002) (citing Carr v. State, 655 So.2d 824, 853 (Miss.1995)).
¶ 33. A “leading question” is “one that suggests to the witness the specific answer desired by the examining attorney.” Tanner v. State, 764 So.2d 385, 405 (¶ 58) (Miss.2000) (quoting Clemons v. State, 732 So.2d 883, 889 (¶ 25) (Miss.1999)). Mississippi Rule of Evidence 611(c) states:
Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony. Ordinarily, leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.
James argues, because Huddleston testified as part of his plea agreement, he was not identified with an adverse party and was not called as a hostile witness. Thus, the trial judge abused his discretion by allowing the State to ask leading questions.
¶ 34. But Rule 611(c) does not restrict the trial judge’s discretion to only *295 allowing leading questions of hostile and adverse witnesses:
[T]he decision to allow a party to ask leading questions during direct examina-tion rests within the sound discretion of the trial court. In other words, a trial court has general discretion to allow leading questions if needed for the development of a witness’s testimony. The use of leading questions is not ground for reversal unless the trial court abused its discretion, and the decision resulted in “substantial” injury to the appealing party.
Osborne v. State, 54 So.3d 841, 845 (¶ 16) (Miss.2011) (internal citations omitted); see Harrison v. State, 49 So.3d 80, 85 (¶ 15) (Miss.2010) (quoting Jones v. State, 606 So.2d 1051, 1059 (Miss.1992)) (“A trial court has the discretion to allow leading questions under certain circumstances, so long as doing so does not prejudice a ‘complaining party.’ ”). Thus, the trial judge did not commit legal error by simply overruling objections to leading questions of a non-adverse, non-hostile witness.
¶ 35. In his brief, James makes generalized arguments about how the trial judge abused his discretion by allowing leading questions. But he does not point to any specific objections that were overruled or how Huddleston’s answers, which he alleged were suggested by the State, prejudiced him. See Harrison, 49 So.3d at 85 (¶ 15). Our review of Huddleston’s direct testimony shows only two objections to leading and/or suggestive questions that the trial judge overruled. And we find no prejudice in either answer. The first question — “So the four of y’all are riding around in the pickup?” — merely retread Huddleston’s testimony about riding around in a truck. And James made no objection to this early testimony on the basis the State was suggesting what type of vehicle James, S.L., and Huddleston were in. The second question was about Huddleston going back with S.L. to find her shoes after the rape. At this point, Huddleston had already testified he heard S.L. scream, saw she was disheveled and upset when she returned, and heard her say James had raped her. We fail to see how Huddleston’s testimony about looking for S.L.’s shoes, even if suggested by the State, substantially injured James. See Osborne, 54 So.3d at 845 (¶ 16). Thus, we find no reversible error on this issue.
III. Weight of the Evidence
¶ 36. James also argues he is entitled to a new trial because the verdict was contrary to the overwhelming weight of the evidence.
¶ 37. “[T]he power to grant a new trial should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005) (quoting Amiker v. Drugs For Less, Inc., 796 So.2d 942, 947(18) (Miss.2000)). “When reviewing a claim based on the weight of the evidence, we evaluate the evidence in the light most favorable to the verdict and ‘will only disturb the verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'” Boyda v. State, 57 So.3d 61, 63-64 (¶ 8) (Miss.Ct.App.2011) (quoting Bush, 895 So.2d at 844 (¶ 18)). “We must accept as true all evidence consistent with the defendant’s guilt, along with any reasonable inferences that might be drawn from the evidence.” Id. at 64 (¶ 8) (citing Young v. State, 891 So.2d 813, 821 (¶ 21) (Miss.2005)).
¶ 38. “The crime of statutory rape is committed when: ... A person of any age has sexual intercourse with a child who: (i) Is under the age of fourteen (14) years; (ii) Is twenty-four (24) or more months *296 younger than the person; and (iii) Is not the person’s spouse. Miss.Code. Ann. § 97-3-65(b) (Supp.2011).[3] James challenges the jury’s finding beyond a reasonable doubt that James had sexual intercourse with S.L. He argues this finding is against the weight of the evidence because: (1) Huddleston and S.L. testified to “grossly divergent” versions of what happened; (2) Huddleston’s and S.L.’s testimonies were improperly elicited by the State through leading questions; (3) the State presented no physical evidence of penetration; and (4) S.L. waited to report the incident to the authorities until months later.
A. Testimony
¶ 39. Besides the general assertion that Huddleston’s and S.L.’s testimonies told inconsistent stories, James cited no specific instances where their testimonies differed. We reviewed both testimonies and find both support the jury’s finding that James raped S.L. Both testified the three of them, along with S.L.’s little brother, were in a truck together the night of the incident. Both testified S.L. ran off and that James ran after her. S.L. maintained James caught up with her and raped her. And Huddleston testified S.L. had returned disheveled and told him James raped her.
¶ 40. Furthermore, if any evidence did conflict, the jury was “the sole judge of the credibility of witnesses and the weight and worth of their testimony.” Gathright v. State, 380 So.2d 1276, 1278 (Miss.1980) (citations omitted). “We have repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the state or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court.” Id.
¶ 41. As already discussed, James made no objections to S.L.’s testimony as being elicited by improper leading questions. And we find no abuse of discretion in the trial court’s allowing Huddleston’s testimony over James’s Rule 611(c) objection.
B. Lack of Physical Evidence
¶ 42. Mississippi’s statutory-rape statute provides: “In all cases where a victim is under the age of sixteen (16) years, it shall not be necessary to prove penetration where it is shown the genitals, anus or perineum of the child have been lacerated or torn in the attempt to have sexual intercourse with the child.” Miss. Code Ann. § 97-3-65(5) (Supp.2011). But “[t]here is no requirement that the State prove tearing or laceration of the victim’s private parts.” McDaniel v. State, 790 So.2d 244, 246-7 (¶ 12) (Miss.Ct.App.2001). Instead, “when the victim is less than sixteen years of age, proof of tearing is an acceptable substitute for proof of penetration.” Id. at 247 (¶ 12).
¶ 43. Establishing penetration requires the State to prove “there was ‘some penetration’ of the victim’s vagina by the defendant’s penis.” Id. at 247 (¶ 13) (citations omitted). “[0]nly ‘slight penetration’ need be shown.’ ” Id. (quoting Jackson v. State, 452 So.2d 438, 440 (Miss.1984)). In McDaniel, this court found the victim’s testimony that actual penetration had occurred was sufficient to prove the element of penetration without any further medical testimony to establish tearing or laeera- *297 tions. Id. at 247 (¶ 14). Here, S.L. testified James put his penis in both her vagina and bottom, causing her to bleed. For the purposes of review, we accept this evidence as true, as it supports the jury’s guilty verdict. Id. at 247 (¶ 15).
¶ 44. And we do not find the lack of physical evidence overwhelmingly weighs against the verdict. In Woods v. State, this court held “[t]he totally uncorroborated testimony of a sex crime victim is sufficient to support a guilty verdict where it is consistent with the circumstances and is not discredited or contradicted by other credible evidence.” Woods v. State, 973 So.2d 1022, 1031 (¶ 26) (Miss.Ct.App.2008) (citing Green v. State, 887 So.2d 840, 845 (¶ 13) (Miss.Ct.App.2004)). We find James presented no evidence that contradicted S.L.’s testimony. Though James argues S.L.’s delay in reporting the rape to the authorities undermines her testimony, S.L. explained she did not report the incident to the authorities until months later because she was afraid her father, if he learned what James had done, would retaliate and might go to jail. It was the jury’s unique role to determine the credibility of this explanation and what effect S.L.’s delay in reporting the incident had on the overall credibility of her testimony about the rape.
¶45. Moreover, “[a] sex crime victim’s testimony is corroborated by the victim’s physical and mental condition after the alleged incident and by the victim’s immediate reporting of the incident.” Id. (citing Vaughn v. State, 759 So.2d 1092, 1098 (¶ 18) (Miss.1999)). Huddleston testified immediately after the rape he heard S.L. yelling. She came back to the truck alone barefoot. Her eyes were red and full of tears, and she told Huddleston that James had raped her. Thus, we find S.L.’s testimony sufficiently corroborated. See id. at 1031 (¶ 27) (finding victim’s testimony sufficiently corroborated because, though she did not immediately report rape to authorities, she did tell someone else about the incident).
¶ 46. On review, we find, viewing the testimony in the light most favorable to the verdict, reasonable jurors could have found James guilty. Thus, we affirm the judgment of conviction and sentence.
¶47. THE JUDGMENT OF THE NEWTON COUNTY CIRCUIT COURT OF CONVICTION OF STATUTORY RAPE AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, TO BE SERVED DAY FOR DAY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, RUSSELL AND FAIR, JJ., CONCUR.

. Because of the nature of the crime and the victim’s age, we use only her initials throughout this opinion.

. Prior to S.L. taking the stand, the trial judge addressed the potential need of leading questions to determine the competency of S.L., a young child, see M.R.E. 611(c) cmt., as well as develop her testimony. See Ivy v. State, 522 So.2d 740, 742 (Miss.1988) (finding M.R.E. 611(c) "acknowledge[s] that leading questions may be necessary to develop the testimony” and that ”[c]hildren are a classic example of the kinds of witnesses for whom leading questions may be necessary”) (citation omitted). But the judge said he would consider any objections by James on a question-by-question basis. James made no objections to any of the State's questions to S.L.

. The crime of statutory rape is also committed when "[a]ny person seventeen (17) years of age or older has sexual intercourse with a child who: (i) Is at least fourteen (14) but under sixteen (16) years of age; (ii) Is thirty-six (36) or more months younger than the person; and (iii) Is not the person’s spouse[J” Miss.Code. Ann. § 97-3-65(a) (Supp.2011).