# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CP-00060-COA

**FORREST THOMAS, III A/K/A FORREST THOMAS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:          12/17/2020
TRIAL JUDGE:               HON. MARGARET CAREY-McCRAY
COURT FROM WHICH APPEALED: WASHINGTON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:    FORREST THOMAS III (PRO SE)
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:        CIVIL - POST-CONVICTION RELIEF
DISPOSITION:               AFFIRMED - 01/24/2023
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT**:

¶1.    In 2007, Forrest Thomas III was convicted of manslaughter and kidnapping and sentenced to consecutive twenty- and fifteen-year sentences. Thomas appeals the Washington County Circuit Court's denial of his motion for post-conviction collateral relief (PCR). Thomas argues that the circuit court erred by (1) sentencing him as a sex offender for kidnapping his own children; (2) accepting his guilty plea to kidnapping his children without a sufficient factual basis while recommending an illegal sentence; (3) accepting his guilty plea without conducting a timely competency hearing; and (4) after conducting the retrospective competency hearing, determining he was competent to plead guilty. After a

review of the record, we find no error and affirm the circuit court's denial of post-conviction relief, including the circuit court's finding that Thomas was competent to enter his guilty pleas.

## FACTS AND PROCEDURAL HISTORY

### I.     Criminal Proceedings

¶2.     Thomas was indicted in Washington County for murder pursuant to Mississippi Code Annotated section 97-3-19(1) (Supp. 2004) for killing his estranged wife Kimberly Thomas on June 7, 2005.  While awaiting trial, Thomas requested a psychiatric examination to determine both his competency to stand trial and his mental state at the time of the alleged offense.  Thomas previously struggled with his mental health and, according to the record, had several mental health diagnoses, including schizophrenia (paranoid type) or possibly bipolar disorder-manic.  The court granted Thomas' request, and forensic psychologist Dr. Criss Lott evaluated Thomas on July 17, 2006.  Dr. Lott was provided with Thomas' arrest history and offense report to review prior to the evaluation.  After Thomas' evaluation, Dr. Lott issued his written report the following day.  This report was provided to the circuit court soon after.  The report determined that Thomas was competent to stand trial.  Before the scheduled competency hearing could take place, however, Thomas entered his plea petition.

¶3.     In his plea petition, Thomas first acknowledged his indictment for murder.  Thomas then waived his right to an indictment by a grand jury for kidnapping in violation of Mississippi Code Annotated section 97-3-53 (Supp. 2004),[1] and instead proceeded under a

---

[1] The statute states in pertinent part:

bill of information. Thomas' plea petition stated he understood he was

> [t]o enter a plea of guilty to the charges of Manslaughter as a lesser included offense of Murder and Kidnapping of a child under sixteen (16) as a sex crime pursuant to MCA Section 45-33-23(g)(1) and to receive a recommendation by District Attorney of (1) a sentence of twenty (20) years for manslaughter . . . and (2) a sentence of fifteen (15) years for kidnapping to serve within the custody and control of the MDOC to run consecutive to the sentence for Manslaughter. . . . The defendant understands and agrees that the sentence imposed for kidnapping pursuant to MCA section 45-33-23(g)(1)[2] is a mandatory day-for-day sentence.

Thomas also declared in the petition that he was mentally competent, "having previously being determined by a licensed psychologist to be competent to stand trial and assist my attorney in my defense" and that he was not under the influence of any drugs or alcohol. The facts of the crimes in the plea petition stated that Thomas shot and killed Kimberly Thomas in the heat of passion and "thereafter kidnapped their children who were in her custody and control" at the time. While not detailed in the plea petition, Thomas later explained in his

---

> Any person who, without lawful authority and with or without intent to secretly confine, shall forcibly seize and confine any other person, . . . or without lawful authority shall forcibly seize, inveigle or kidnap any child under the age of sixteen (16) years against the will of the parents or guardian or person having the lawful custody of the child, upon conviction shall be imprisoned for life in the custody of the Department of Corrections if the punishment is so fixed by the jury in its verdict. If the jury fails to agree on fixing the penalty at imprisonment for life, the court shall fix the penalty at not less than one (1) year nor more than thirty (30) years in the custody of the Department of Corrections.

Miss. Code Ann. § 97-3-53.

[2] Under Mississippi law, the kidnapping of a victim below the age of eighteen is considered a "sex offense" or a "registrable offense." Miss. Code Ann. § 45-33-23(g)(i) (Rev. 2004). The statute was amended in 2013, and a new subsection was added, which changed the subsection of this provision to Mississippi Code Annotated section 45-33-23(h)(i) (Supp. 2013). 2013 Miss. Laws ch. 521, § 1 (S.B. 2732).

PCR motion that on June 7, 2005, after Kimberly was killed, he took his two minor children from Kimberly's home after her death to the home of his mother. This activity was the basis of the kidnapping charges.

¶4. On August 18, 2006, prior to the plea hearing, the circuit court held a hearing for pretrial and ex parte matters. After hearing the State's pretrial motion and then excusing the State from the courtroom, the circuit judge and Thomas engaged in a lengthy ex parte discussion. This discussion was sealed to prevent any prejudice to Thomas in the event he received a new trial and to prevent any disclosure of communications that would violate the attorney-client privilege.[3]

¶5. On May 18, 2007, Thomas' plea hearing took place. During the hearing, Thomas' speech was respectful and appropriate. He responded "yes, ma'am" when asked if he understood that he was pleading guilty to manslaughter and kidnapping. He answered that he reviewed his plea petition with his attorney before signing it and had discussed the plea petition with his mother, father, and brother, attorney Karl King.[4] Thomas answered affirmatively when asked if he was voluntarily giving up his constitutional right to a trial and to be indicted by a jury on the kidnapping charge. He also answered affirmatively when asked if the State's recitation of the facts of his murder charge was correct. He agreed that

---

[3] Although sealed, the circuit judge would utilize her observation of Thomas during the August 18, 2006 ex parte proceeding in her determination that he was competent to enter his guilty plea since she engaged in lengthy discussions with Thomas regarding his case on that day.

[4] King was not licensed to practice law in Mississippi and did not represent Thomas during any of his hearings, although was he frequently consulted by Thomas and apparently operated in an advisory capacity.

he intended to plead guilty to manslaughter. Next, Thomas was read the factual basis for the kidnapping charge. Thomas conferred with his attorney over the facts. (Thomas questioned whether Kimberly had sole lawful custody of the children at the time, but after the State pointed to the final decree of divorce, Thomas agreed that she had custody at the time.) Thomas agreed that the State's recitation of facts for the factual basis for kidnapping was correct, acknowledging, "they are the facts of the charge, as you understand it to be, of kidnapping that you intend to plead guilty to." After pleading guilty, Thomas was sentenced according to the recommendation in his plea hearing.

## II.     Thomas' Prior Court Cases

### A.     Thomas' First PCR Motion

¶6.     Thomas first filed a timely PCR motion arguing that "he could not have been guilty of kidnapping because he was the father of the two children, and their mother, his ex-wife, was deceased at the time he kidnapped them; thus, the removal of the two children could not have been 'against the will of their mother' as charged in the bill of information." *Thomas v. State* (*Thomas I*), 107 So. 3d 1046, 1048 (¶4) (Miss. Ct. App. 2012). He also alleged ineffective assistance of counsel. *Id*. at (¶5). The circuit court denied Thomas' PCR motion and this Court affirmed the circuit court's order denying Thomas' first PCR motion on these issues. *Id*. at (¶7).

### B.     Thomas' Application for Writ of Habeas Corpus Under 28 U.S.C. § 2254

¶7.     Next, Thomas filed an application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in federal court. *Thomas v. Outlaw* (*Thomas II*), 2014-CV-00060-DMB-JMV, 2014

WL 3699922, at *1 (N.D. Miss. July 24, 2014). Thomas' application was dismissed as untimely, but not before the Northern District Court determined that his kidnapping sentence was not illegal. Thomas had challenged the fact that kidnapping is considered a sex crime under Mississippi law, creating a mandatory sentence. *Id*. at *3. The district court found that Thomas' signed plea offer expressly stated that "[t]he defendant understands and agrees that the sentence imposed for kidnapping pursuant to MCA Section 45-33-23(g)(1) is a mandatory day-for-day sentence" and that Mississippi law creates a sex offense for the kidnapping of a victim under the age of eighteen. *Id*. (citing Miss. Code Ann. § 45-33-23(g)(i) (Rev. 2004)). The federal court recognized that "Thomas acknowledged the facts of the kidnapping charge at his plea colloquy, including the fact that the children were under the age of sixteen. . . . Therefore, the crime is considered a sex offense under Miss. Code Ann. § 45-33-23(g)(i)." *Id*. at *4. The district court continued, "Moreover, Thomas agreed to a plea offer that explicitly informed him that he would be sentenced pursuant to this statute, and that his sentence would be mandatory." *Id*. The federal court then determined that "[a]ccordingly, his sentence is not illegal." *Id*.

### C. Thomas' Administrative Challenge to His Sentence

¶8. Thomas then challenged his status as a sex offender by filing a request for administrative remedy relief from MDOC. *Thomas v. Miss. Dep't of Corr.* (*Thomas III*), 248 So. 3d 786, 788 (¶15) (Miss. 2018). Thomas challenged the removal of his trusty status and meritorious earned time from his time sheet for his kidnapping sentence. *Id*. MDOC informed Thomas that "[k]idnapping under [section] 97-3-53 is coded as kidnapping of a

6

minor under the age of [sixteen and] is a mandatory crime. You will have to serve the entire [fifteen] years day for day, without any type of good time. Upon completion of the [fifteen] years you may qualify for trusty earned time on the [twenty] years manslaughter charge." *Id*. Thomas then appealed to the Circuit Court of Washington County. The circuit entered an order affirming MDOC's decision, which Thomas appealed.

¶9.     Our Supreme Court reviewed Thomas' issues, holding that Mississippi law classifying Thomas as a sexual offender under section 45-33-23(h)(i), formerly section 45-33-23(g)(i), was not in conflict with a federal law that excludes parents who kidnap their children from being deemed sexual offenders. *Id*. at 790 (¶¶15-16). Our Supreme Court determined that the federal statutes are considered "the floor or minimum of what a state must require in order to comply with the Sex Offender Registration and Notification Act [SORNA]." *Id*. at (¶16). Our Supreme Court pointed out that "a jurisdiction may have a system that requires registration by broader classes of convicted offenders than those identified in [SORNA]." *Id*. at (¶16) (citing U.S. Dep't of Justice, *The National Guidelines for Sex Offender Registration and Notification*, https://smart.gov/pdfs/final_sornaguidelines.pdf (last visited January 24, 2023)). The Supreme Court found no merit to Thomas' arguments that he was unlawfully classified as a sex offender in violation of federal law or that his constitutional rights had been violated. *Id*. at 790-91 (¶¶17-19). Nor did the Court believe that Mississippi was transforming the sex offender registration statute, section 45-33-23(h)(i), into a criminal penalty. *Id*.

### D.     Thomas' Second Application for Writ of Habeas Corpus

¶10.	In 2018, Thomas filed a second application for writ of habeas corpus in federal court in *Thomas v. Taylor*, No. 3:18-CV-238-DMB-DAS, 2022 WL 851725 (N.D. Miss. Mar. 22, 2022). Thomas again alleged "that MDOC is unlawfully classifying the petitioner, a parent, as a sex offender, pursuant to MCA § 45-33-23(g)(i), contrary to [federal law]" and that "MDOC is unlawfully transforming Mississippi's sex offender registration statute, MCA § 45-33-23(g)(i), into a criminal penalty." *Id*. at *1. Again, his classification as a sex offender was deemed permissible, and the district court found that Mississippi was not unlawfully transforming its sex offender registration statute into a criminal penalty. *Id*. at *3.

### III.	Thomas' Present PCR Case

¶11.	Thomas filed his second PCR motion in 2016, before filing his second federal habeas claim. In his PCR motion, Thomas challenged (1) the imposition of an illegal sentence for kidnapping because he was convicted of kidnapping while incompetent; (2) the circuit court's failure to establish a sufficient factual basis for kidnapping his own children; and (3) the circuit court's failure to determine competency prior to his plea hearing. Thomas explicitly noted in his petition he did not wish to dispute his competency to plead guilty to the manslaughter conviction, only his competency to plead guilty to the kidnapping charge.

¶12.	In an order dated December 27, 2017, the circuit court denied Thomas' claim that he received an illegal sentence. The court noted that he was sentenced pursuant to his guilty plea to sentences that were "in accordance with the maximum and minimum penalties for each conviction." The circuit court also denied Thomas' claim that the court failed to

establish a sufficient factual basis for the kidnapping charge. The circuit court noted that Thomas accepted the bill of information, waiving an indictment for the kidnapping charge. The circuit court found:

> Thomas' bill of information laid out the elements of kidnapping. . . . Thomas also swore in his waiver of indictment that defense counsel had explained to him the nature of the charged offense. In his detailed plea petition, Thomas acknowledged reading and understanding his plea petition and stated that his attorney had advised him of the nature of the charge and the elements. During his plea colloquy, Thomas stated that he understood the nature of the offense charged.

After reminding Thomas that a guilty plea waives all technical and non-jurisdictional issues in a bill of information[5] and that solemn declarations in open court carry a strong presumption of verity,[6] the circuit court determined that a sufficient factual basis had been established.

¶13. The circuit court did find merit in Thomas' argument that it erred when it failed to provide a competency hearing to him after one was requested and granted. According to the circuit court, at the time of Thomas' criminal trial Uniform Rule of Circuit and County Court 9.06 provided that after a competency examination, "the court *shall* conduct a hearing to determine if the defendant is competent to stand trial."[7] URCCC 9.06 (emphasis added). Because of the mandatory language of this rule, the circuit court determined that Thomas was entitled to a competency hearing. The circuit court's order then determined that sufficient

---

[5] *Banana v. State*, 635 So. 2d 851, 853-54 (Miss. 1994).

[6] *Baker v. State*, 358 So. 2d 401, 403 (Miss. 1978).

[7] This rule has since been supplanted by the Mississippi Rules of Criminal Procedure, effective July 1, 2017.

information existed to make the retrospective hearing meaningful. The court's order pointed to the state hospital's medical report from the competency evaluation, the doctor who performed the evaluation, and the transcript from Thomas' guilty plea proceeding, which were all available for a retrospective hearing.

### IV. The Competency Hearing

¶14. Thomas' retrospective competency hearing was originally set for September 20, 2019, but on that day, the circuit court received notice that Thomas had not obtained the records that he had subpoenaed. The hearing was continued and took place on December 20, 2019. At the hearing Dr. Lott, who was qualified as an expert in clinical psychology, testified at length regarding his July 2006 evaluation and report. At the time of his report, Dr. Lott found Thomas was competent to stand trial. Thomas objected to Dr. Lott's testimony because Dr. Lott had not considered Thomas' records related to his mental health history before the date of the incident. Dr. Lott testified that he had requested but not received Thomas' treatment records at the time of his evaluation. Although Dr. Lott had not received Thomas' outside medical records, he explained that he did not need them for his evaluation of Thomas' competency to stand trial because "competency . . . doesn't have anything to do with the past. . . . The records certainly may have been helpful in looking at what he had done in the past, what his treatment had been, and what his diagnoses may have been; but the question of competency is a present tense analysis." Dr. Lott stated, "The question of competency only addresses how the individual looks at the time that you're evaluating them."

¶15. During the evaluation, Dr. Lott found Thomas possessed "some oppositionality and

uncooperativeness, but [Dr. Lott] did not sense that there was any problem with his ability to comprehend me or his ability to communicate with me in a rational manner." Dr. Lott opined that in 2006 "it was my opinion that [Thomas] had the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding, and he had a factual and rational understanding of the nature and the object of the legal proceedings against him."

¶16. Thomas also found fault with the timing of the competency evaluation, which was completed in July 2006, ten months prior to Thomas' May 2007 guilty plea hearing. But during his testimony, Dr. Lott stated that, despite the time gap, the report would still be considered contemporaneous "if there had not been any substantial changes in [the patient's] demeanor and behavior." Dr. Lott testified he had received no notice of any changes in Thomas' behavior.

¶17. Dr. Lott also reviewed the transcript of Thomas' May 2007 plea colloquy and found that Thomas did not exhibit unusual behavior and appeared to interact with his attorney without significant difficulty. After reviewing his prior report, the transcript of the plea colloquy, and the information presented to him at the retrospective hearing, Dr. Lott's opinion at the 2019 hearing remained the same as in his original 2006 report—that Thomas was competent to stand trial.

¶18. Thomas struggled to access his prior medical records due to the passage of time. Thomas called Dr. Hamdan, a physician from Mental Health, to testify in his behalf at the competency hearing. According to Thomas, Dr. Hamdan treated Thomas in 2002 and

prescribed him mental health medications. Dr. Hamdan, when asked if he was familiar with the defendant, could only answer "not really." He also could not answer any questions regarding Thomas' past medical history. Dr. Hamdan testified that he searched for Thomas' medical records after receiving a subpoena, but he believed that they were destroyed in 2013. Not only was Dr. Hamdan unable to locate Thomas' records, but other evidence was lost or destroyed as well. Additional past medical records Thomas requested from Washington County Sheriff's Department for June 2005 through June 2007 (while Thomas was incarcerated there) could not be located. Furthermore, Dr. Gilbert MacVaugh, who examined Thomas in 2000 and 2005 for disability-determination services had died and was unable to testify, although his records for Thomas were brought to the circuit court by his son Dr. Skipper MacVaugh.[8]

¶19. Thomas called his brother King to testify that he was emotionally unstable on the day of the plea hearing. King stated that his brother had outbursts and was not compliant at the hearing. King believed that Thomas could not understand, process, and digest the proceedings. However, after reviewing the transcript of the plea hearing, King was unable to identify anything unusual about the proceeding.

¶20. The State called District Attorney DeWayne Richardson[9] and Assistant District

---

[8] Dr. Lott reviewed Dr. MacVaugh's records prior to the retrospective competency hearing but determined they did not alter his opinion that Thomas was competent to stand trial.

[9] Richardson was not an attorney of record during Thomas' 2007 plea proceedings. He testified, however, that he was present in the judge's chambers, standing by the door when the judge conversed with Thomas regarding his "plea or the options" and a motion for a continuance. He testified he was "assisting and observing" the prosecutors of record. In

12

Attorney Kimberly Merchant as rebuttal witnesses to testify that Thomas' behavior around the time of the plea hearing was not abnormal. Richardson could not remember if he attended the plea hearing but recalled being present at an ex parte hearing leading up to the hearing. He found Thomas was "highly intelligent" and recalled him stepping out of the judge's chambers to discuss the charges with his attorney. Merchant, who thoroughly recalled the plea hearing, echoed Richardson's assessment. She recalled Thomas stopping to speak with his attorney at various times throughout the hearings before and during the plea. When asked about Thomas' behavior at the plea hearing, Merchant "did not recall anything remarkable that was different from any other plea. . . . [M]ost of his responses were either 'yes, ma'am' or 'no, ma'am.'" When asked if during her observation of Thomas conferring with his attorney she thought that he was able to confer rationally and cohesively, Merchant answered that "there was nothing remarkable about the way they were interacting."

## V.      Circuit Court's Findings

¶21.    On December 17, 2020, the circuit court issued a detailed analysis of its facts and findings. The court found that *Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir. 1986), authorized retrospective competency hearings "where sufficient records are available to guarantee reliability." In the present case, the court stated that Dr. Lott's 2006 evaluation, the August 2006 ex parte pretrial hearing transcript, and the transcript from Thomas' guilty-plea proceeding were sufficient under Mississippi law "to guarantee the reliability of the

2007, Richardson was still an assistant district attorney. In 2008 Richardson became the district attorney and was the district attorney when he testified at Thomas' 2019 retrospective competency hearing.

Court's retrospective competency determination in this case." After a thorough reiteration of the evidence and testimony offered at the competency hearing, the circuit court concluded that Thomas failed to establish that he was incompetent on the day he pled guilty.

¶22. The circuit judge specifically noted her own "observations of Thomas' communication and interactions with the court and trial counsel during pre-trial proceedings, the guilty plea and sentencing hearing and an ex parte hearing on August 18, 2006, in which she found Thomas was alert, articulate, and aware of the procedural and legal matters presented." The court found that King's testimony that Thomas was not coherent on the day of the hearing was directly contradicted by the transcript of the plea hearing and unsupported by the evidence. The circuit court held that Thomas had "(1) sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding; and (2) a rational as well as a factual understanding of the proceedings against him." The circuit court adjudged that "Thomas was competent to enter guilty pleas on May 18, 2007 and that he freely, knowingly, and voluntarily entered said guilty pleas on that date."

¶23. In sum, the circuit court entered its order on December 27, 2017, summarily denying all requests for post-conviction relief except the contention regarding his competency. After holding the retrospective competency hearing, the court entered its order effectively denying post-conviction relief on the merits of the remaining claim on December 17, 2020. Aggrieved, on January 12, 2021, Thomas filed his notice of appeal.

**STANDARD OF REVIEW**

¶24. "When reviewing a circuit court's denial or dismissal of a PCR motion, we will only

14

disturb the circuit court's decision if it is clearly erroneous; however, we review the circuit court's legal conclusions under a de novo standard of review." *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019) (quoting *Williams v. State*, 228 So. 3d 844, 846 (¶5) (Miss. Ct. App. 2017)).

## DISCUSSION

¶25. Thomas' current PCR motion is successive because he has filed at least one previous PCR motion. Miss. Code Ann. § 99-39-23(6) (Rev. 2020) (barring second or successive PCR motions with few exceptions). "Mississippi statutory law grants each movant 'one bite at the apple when requesting post-conviction relief.'" *Hayes v. State*, 282 So. 3d 1185, 1187 (¶8) (Miss. Ct. App. 2019) (quoting *Dobbs v. State*, 18 So. 3d 295, 298 (¶9) (Miss. Ct. App. 2009)). However, "errors affecting fundamental constitutional rights are excepted from the procedural bars . . . ." *Rowland v. State*, 42 So. 3d 503, 506 (¶9) (Miss. 2010). Because Thomas' second PCR motion involves questions of his fundamental right to be free from an illegal sentence and his due process right to be competent when pleading, the statutory bar against successive motions does not apply. *Id*.

### I. Thomas' Sentence as a Sex Offender

¶26. Thomas protests his sentencing, as a parent of the kidnapped children, to kidnapping as a sex offense under Mississippi Code Annotated 45-33-23. Thomas also appears to make the claim that the language of the offer in the plea petition, which stated that he would be sentenced to fifteen years for "kidnapping of a child under sixteen (16) as a sex crime pursuant to MCA Section 45-33-23(g)(1)" transformed the civil, non-punitive statute into a

15

criminal penalty. We disagree with these arguments and affirm the circuit court's denial of this claim.

¶27. The Mississippi Supreme Court already touched on part of Thomas' argument in his case involving the administrative claim within the MDOC. The Supreme Court stated that it was permissible for our Legislature to expand the sex-offender registration laws to include a registration requirement for offenses where the offender is a parent of the victim. *Thomas III*, 248 So. 3d at 790-91 (¶¶16-17); *see also Thomas II*, 2014 WL 3699922, at *3-4.

¶28. Here, Thomas explicitly admitted to the facts of the kidnapping charge at his plea hearing, as well as the State's underlying facts that he unlawfully seized the children, who were under sixteen, against the will of their mother. His plea petition and plea offer explicitly acknowledged that "kidnapping is considered a sex offense under § 45-33-23(g)(1)." He affirmed that he had an opportunity to discuss his sentence with his attorney. Because the kidnapping statute specifically allows parents to be convicted of kidnapping, and because the sex offense registration statute explicitly allows kidnapping of children under the age of eighteen to be defined as a registrable sex offense, any argument that Thomas' sentence (either for kidnapping or as a sex offender) was unlawful is without merit.[10] Like our Supreme Court and the district court, we find no error in Thomas' sentence for parental kidnapping under the sex-offender statute.

---

[10] There are legitimate concerns with the effects of the statute that may classify offenders of non-sexual kidnapping as sex offenders. Justice Kitchens, in his dissent in *Thomas III*, argues that there is no justification for classifying perpetrators of non-sexual kidnapping as sex offenders. *See Thomas III*, 248 So. 3d at 791 (¶27) (Kitchens J., dissenting). But the determination of who is labeled a sex offender is statutorily prescribed, meaning it is within the purview of the Legislature.

¶29. Thomas also seems to make the argument that the language of his plea petition caused him to be illegally sentenced for kidnapping pursuant to section 45-33-23(g)(i) (as opposed to kidnapping pursuant to the criminal kidnapping statute, section 97-3-53). He states that this was also the exact language included in his sentencing order (which is not in the record). The plea petition and offer does state that Thomas agreed to enter a plea of guilty "to kidnapping of a child under sixteen (16) as a sex crime pursuant to MCA Section 45-33-23(g)(1)." But on the first page of the plea petition, under the "charges" section, it clearly lists "kidnapping, pursuant to MCA section 97-3-53" as the charge. The bill of information for kidnapping refers to section 97-3-53 as well. Given this express language in the plea petition, as well as Thomas' testimony at the plea hearing that he was fully advised of the nature of his charge, it is clear Thomas was sentenced to kidnapping under section 97-3-53, not the sex-offender statute. As such, we see no error with the circuit court's denial.

## II. Sufficient Factual Basis for Kidnapping Plea

¶30. Thomas' next assignment of error fails for many of the same reasons as his first. Thomas signed his plea petition, which stated that he kidnapped his children. His affidavit attached to the petition states that the petition was signed with full knowledge of its contents. Thomas, during his plea colloquy, admitted to the State's recitation of the factual basis of the charge of kidnapping. He affirmed that he unlawfully seized and confined his minor children against the will of their mother, who had lawful custody, removing them from their residence while they were under the age of sixteen. Thomas explicitly admitted to all elements of the crime of kidnapping. Thomas further admitted that his attorney had spoken to him about the

17

evidence the State had against him regarding his charges and had discussed the case and the charges with him. "The Mississippi Supreme Court [has] found that there are several ways to establish that there exists a sufficient factual basis to accept the guilty plea, but, simply, 'there must be enough [evidence] that the court may say[,] with confidence[, that] the prosecution could prove the accused guilty of the crime charged.'" *Brooks v. State*, 72 So. 3d 552, 555-56 (¶9) (Miss. Ct. App. 2011) (quoting *Corley v. State*, 585 So. 2d 765, 767 (Miss. 1991)). Furthermore, "Solemn declarations in court carry a strong presumption of verity." *Gable v. State*, 748 So. 2d 703, 706 (¶11) (Miss. 1999). Here, because of Thomas' solemn declaration in court affirming the factual basis of the crime as set forth by the State, and because by his signed plea petition, he swore he signed with full knowledge of the factual basis set forth in the plea, this Court can say with confidence that a sufficient factual basis exists for the circuit court to accept his guilty plea. Thus, we find no error in the circuit court's determination on this issue.

III. **Accepting Thomas' Guilty Plea Without a Timely Competency Hearing**

¶31. Thomas next asserts that the circuit court erred by accepting his guilty plea without a timely competency hearing. It is true that "[t]he conviction of an accused person while he is legally incompetent violates due process[.]" *Pate v. Robinson*, 383 U.S. 375, 378 (1966) (citing *Bishop v. United States*, 350 U.S. 961 (1956)). Specifically as it relates to pleas, a defendant "may not . . . plead guilty unless he does so 'competently and intelligently.'" *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)).

18

¶32. While a concurrent determination of competency is preferred, courts have long recognized retrospective competency hearings are appropriate when "there is sufficient data available to guarantee reliability." *United States v. Makris*, 535 F.2d 899, 904 (5th Cir. 1976); *see also Lokos v. Capps*, 625 F.2d 1258, 1262 (5th Cir. 1980); *Wheat v. Thigpen*, 793 F.2d 621, 630 (5th Cir. 1986); *James v. State*, 86 So. 3d 286, 293 (¶27) (Miss. Ct. App. 2012). A lack of contemporaneous data is unlikely to protect a defendant's due process rights, and in such a case a retrospective competency determination would not be adequate. *See Drope v. Missouri*, 420 U.S. 162, 176, 183 (1975) (accepting possibility of constitutionally adequate retrospective evaluation of defendant's pretrial competency, but not under the facts of the case sub judice, where the defendant's competency evaluation had yet to occur). "Contemporaneous expert medical evidence often provides the most useful evidence" of whether a meaningful retrospective hearing may be held. *James*, 86 So. 3d at 293 (¶27) (quoting *Wheat*, 793 F.2d at 630) (citing *Lokos*, 625 F.2d at 1262).

¶33. In *Pitchford v. State*, 240 So. 3d 1061 (Miss. 2017), our Supreme Court explicitly overruled *Coleman v. State*, 127 So. 3d 161 (Miss. 2013), and its progeny. *Pitchford*, 240 So. 3d at 1066 (¶29). *Coleman* had held that under the mandatory language of Uniform Rule of Circuit and County Court 9.06 (which does not mention retrospective competency hearings) a retrospective hearing did not adequately protect a defendant's due process. *Coleman*, 127 So. 3d at 166, 168 (¶¶13, 19-20). But in *Pitchford*, our Supreme Court reversed course and held:

> Where sufficient information is available to conduct a meaningful hearing to evaluate retrospectively the defendant's competence to stand trial, such a

hearing does not violate due process standards. *See, e.g.*, *Wheat*, 793 F.2d at 630 ("The test for the district court in determining the question of meaningfulness is whether 'the quantity and quality of available evidence was adequate to arrive at an assessment that could be labeled as more than mere speculation.'") (quoting *Bruce v. Estelle*, 536 F.2d 1051, 1057 (5th Cir. 1976), *cert. denied*, 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed. 2d 770 (1977)).

*Pitchford*, 240 So. 3d at 1070 (¶50).

¶34. Here, the circuit court had an abundance of contemporaneous data available for the retrospective competency hearing. The record before the circuit court included the July 2006 report from Dr. Lott's competency evaluation, the transcript from Thomas' August 2006 ex parte pre-trial hearing, the transcript from Thomas' 2007 guilty-plea hearing, and the circuit court's own recollections and observations from Thomas' earlier proceedings. Furthermore, Dr. Lott, who evaluated Thomas in 2006, was also available to testify. The circuit court, in its December 2017 order finding Thomas should receive a retrospective competency hearing, determined that this information was sufficient to make the retrospective hearing meaningful. Again, in the circuit court's December 2020 "Findings of Fact and Conclusions of Law" after the competency hearing, the court repeated that the record was "sufficient to guarantee the reliability of the Court's retrospective competency determination in this case."

¶35. One of Thomas' arguments against the propriety of his competency hearing was that the feasibility of the retrospective competency hearing must be determined by the court in a separate hearing before the retrospective competency hearing can proceed. He points to federal cases where a preliminary hearing regarding the feasibility of the retrospective competency hearing occurred before the retrospective hearing took place. *See Wheat*, 793 F.2d at 630; *In re Galaviz*, 232 Cal. Rptr. 3d 829, 843 (Cal. Ct. App. 2018). While the

20

federal cases Thomas points to mention in dicta a hearing occurred to determine whether a retrospective competency hearing was feasible, no mandatory language in these cases requires one. Nor does Thomas point to any State requirement for a preliminary hearing specifically to determine whether a retrospective competency hearing is feasible. The circuit court, in its 2017 order and opinion determining a competency hearing was required, outlined the "sufficient information" available to allow the competency hearing, as described above. The circuit judge also outlined the ample contemporaneous evidence in her 2020 order after the retrospective competency hearing took place. In the absence of an authoritative requirement for a separate preliminary hearing regarding the feasibility of a retrospective competency hearing, this Court declines to create that requirement here.

¶36. Another of Thomas' arguments attacking the propriety of his retrospective competency hearing revolves around the ruling in *Pitchford*. Thomas argues the holding in *Pitchford* constituted a new rule of criminal procedure because it overturned *Coleman*. The United States Supreme Court held that new rules of criminal procedure cannot be applied retroactively in *Teague v. Lane*, 489 U.S. 288, 311 (1989). This doctrine was later adopted by our State in *Manning v. State*, 929 So. 2d 885 (Miss. 2006). Thomas argues that since *Pitchford*'s holding is a new rule of criminal procedure, it is not retroactive, and it should not apply to his 2007 plea hearing. But as the previously cited cases addressing the use of retrospective competency hearings establish, the permissible use of retrospective competency hearings is anything but "new." *See Makris*, 535 F.2d at 904; *Lokos*, 625 F.2d at 1262; *Wheat*, 793 F.2d at 630; *James*, 86 So. 3d at 293 (¶27). The *Pitchford* ruling is merely a

21

clarification of the existing law. A *Teague* analysis regarding retroactivity is not necessary in a case that does not announce a new law, but instead provides a clarification of already existing law. *See Teague*, 489 U.S. at 307; *Carr v. State*, 178 So. 3d 320, 328 (¶26) (Miss. 2015) (King, J., dissenting). For this reason, a *Teague* analysis is not appropriate in this case.

¶37. In sum, because there was an abundance of contemporaneous evidence that existed to make the retrospective competency hearing meaningful, and because Thomas can point to no reason why the retrospective competency hearing was not proper, the retrospective hearing was adequate to evaluate Thomas' competence to stand trial. *Pitchford*, 240 So. 3d at 1070 (¶50).

## IV. Determination of Competency

¶38. Thomas' final contention is that the circuit court erred by finding him competent to plead guilty. After a review of the record, we do not find the circuit court's conclusion to be in error.

¶39. In Mississippi, a defendant is legally competent to stand trial if he or she is able to (1) perceive and understand the nature of the proceedings; (2) rationally communicate with his attorney about the case; (3) recall relevant facts; (4) testify in his own defense if appropriate; and (5) "whose ability to satisfy the foregoing criteria is commensurate with the severity and complexity of the case." *James*, 86 So. 3d at 291 (¶17) (quoting *Howard v. State*, 701 So. 2d 274, 280 (Miss. 1997), *overruled on other grounds by Hearn v. State*, 3 So. 3d 722, 730 n.11 (Miss. 2008)).

¶40. Here, the circuit court relied on the extensive testimony of Dr. Lott, who evaluated

Thomas contemporaneously with his guilty plea and found him to be competent to stand trial. Specifically, Dr. Lott stated, "[I]t was my opinion that he had the sufficient present ability to confer with his attorney with a reasonable degree of rational understanding, and he had a factual and rational understanding of the nature and the object of the legal proceedings against him." This was Dr. Lott's opinion at the time of the plea hearing and it remained his opinion after reading the available MDOC and medical records prior to the retrospective competency hearing. And although Dr. Lott stated that he would have liked to view the missing records, they "did not give him sufficient pause for the question regarding competency" because the lost records were applicable to Thomas' mental health diagnoses—not to his legal competency to stand trial. Dr. Lott determined that the missing records were not needed for his assessment of competency.

¶41. Dr. Lott's report was also available to the circuit court as evidence. Transcripts of in-depth conversation with the circuit court during pre-trial hearings were available as well. The plea-hearing transcript was available and reflected no abnormal interactions between Thomas and the circuit court. Witnesses like Merchant also testified to the normalcy of the plea petition and that Thomas appeared to understand the nature of the proceedings, respond to the circuit court's prompts, and understand the nature of the proceedings. Given the abundance of information before the circuit court, we find no error in the circuit court's conclusion that Thomas was competent to plead guilty in 2007 and that Thomas' guilty pleas were freely, knowingly, and voluntarily given with sufficient factual bases.

**CONCLUSION**

23

¶42. For these reasons, we affirm the circuit court's order denying Thomas' PCR claims regarding sentencing Thomas as a sex offender for kidnapping his own children and accepting his guilty plea to kidnapping. We also affirm the circuit court's determination that a retrospective competency hearing could be conducted, as well as the court's conclusion that Thomas was competent to plead guilty in 2007.

¶43. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., SMITH AND EMFINGER, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**